THE UNION ELEVATED RAILROAD COMPANY

v.

WILSON K. NIXON.

|199   235|
|202  ¹529|

*Opinion filed October 25, 1902—Rehearing denied December 5, 1902.*

1. CONTRACTS—*contract for services in securing frontage consents construed.*  A contract to obtain frontage consents to the building of an elevated railroad loop, whereby the company agreed to pay its employee $500 per month for his services and in case the company was "successful" and his efforts had helped in securing the required frontage to pay the further sum of $5000 within thirty days after the passage and acceptance of the ordinance, does not make such extra compensation dependent upon the passage of an ordinance for the entire line of the loop, but upon the successful completion of the loop and the effectiveness of the employee's services.

2. SAME—*agreement to obtain frontage consent not against public policy.*  An agreement to pay so much a month to a party to obtain frontage consents for a public improvement is not against public policy, even though extra pay is promised after the passage of the ordinance if the party's efforts in obtaining consents have aided in the success of the enterprise, where he has nothing to do with the council or the passage of the ordinance except to get property owners' consents.

3. INTEREST—*when allowance of interest is conclusive.*  The allowance of interest by the trial and Appellate Courts upon a claim at law is conclusive upon the Supreme Court where there is some evidence tending to show unreasonable and vexatious delay.

*Union Elevated Railroad Co. v. Nixon,* 99 Ill. App. 502, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

CLARENCE A. KNIGHT, and WILLIAM G. ADAMS, for appellant.

BENTLEY & BURLING, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an action of assumpsit, brought by the plaintiff in the circuit court of Cook county, against the defendant, to recover for services rendered the defendant

in procuring consents to the erection of an elevated railroad loop on certain streets in the business center of the city of Chicago from the owners of real estate fronting upon said streets. The declaration consists of the common counts. The general issue was filed, a jury was waived and a trial had before the court, which resulted in a finding and judgment in favor of the plaintiff for $5937.50, which was affirmed by the Appellate Court, and a further appeal has been prosecuted to this court.

It appears from the evidence that prior to the employment of the plaintiff, the Lake Street Elevated Railroad Company, the Metropolitan West Side Elevated Railroad Company, the Chicago and South Side Rapid Transit Railroad Company and the Northwestern Elevated Railroad Company were each operating, or proposing to erect and operate, an elevated railroad in the city of Chicago, and that they each desired to construct or procure the construction of an elevated railroad loop in the down-town district of the city of Chicago whereby the termini of their railroads might be connected; that the defendant, the Union Elevated Railroad Company, was incorporated with a view to construct such elevated railroad loop; that a contract was entered into between defendant, the Union Elevated Railroad Company, and the four elevated railroad companies above mentioned, whereby it was agreed that the defendant, the Union Elevated Railroad Company, should apply to the city council of the city of Chicago for an ordinance authorizing the construction by it of an elevated railroad loop within said district, for the purpose of effecting the connection of the down-town termini of said four railroads; that so soon as such ordinance should be passed by the city council and accepted by the defendant, the Union Elevated Railroad Company, it should proceed to construct such elevated railroad loop, and upon the completion thereof the defendant, the Union Elevated Railroad Company, should execute a lease of said elevated railroad

loop to said four elevated railroad companies, granting them the exclusive common and equal use thereof; that the defendant, the Union Elevated Railroad Company, entered upon such undertaking; that the ordinance or ordinances necessary to authorize the construction of said elevated railroad loop could not be passed by the city council except upon the petitions signed by the owners of land representing the one-half of the frontage of the street or streets, or parts thereof, upon which the said elevated railroad loop was to be erected; that in order to obtain such consents the defendant, the Union Elevated Railroad Company, in the month of December, 1894, entered into an agreement with the plaintiff to assist in procuring such consents, for which it agreed to pay him $500 per month for the time which he should devote to such service, and in case the defendant, the Union Elevated Railroad Company, was successful and the efforts of the plaintiff had helped in securing the legal amount of frontage, to pay him the further sum of $5000 within thirty days after the passage and acceptance of the ordinance. The plaintiff immediately entered upon such service, and remained in the employ of the defendant, the Union Elevated Railroad Company, for eleven months, during which time he procured the consents of numerous property owners along the line of the proposed elevated railroad loop, and was paid at the rate of $500 per month to November 30, 1895, and it is for the recovery of the additional $5000, and interest from June 26, 1896, at five per cent, that this suit is brought. Prior to June 26, 1896, the necessary number of consents were obtained, either by the defendant or other companies to whose rights it has succeeded, and the entire elevated railroad loop was completed and owned and operated as a single system by the defendant, the Union Elevated Railroad Company, for a considerable length of time prior to the bringing of this suit.

The defendant, the Union Elevated Railroad Company, upon the hearing submitted to the court certain propositions which the court declined to hold as the law of the case, and the refusal of the court to so hold is assigned as error.

*First*—The court was requested to hold that the obtaining of a sufficient number of consents to authorize the passage of the ordinance authorizing the construction of said elevated railroad loop without the defendant, the Union Elevated Railroad Company, being obliged to make compensation therefor to the property owners, was a condition precedent to the right of the plaintiff to recover. This holding is predicated upon the claim of the defendant that the undisputed evidence in this case is that the plaintiff was to receive from the defendant, the Union Elevated Railroad Company, $500 per month for his services in soliciting petitions, and was also to receive a bonus of $5000 if the company was successful in securing sufficient petitions to authorize the passage of the ordinance desired without being obliged to make compensation therefor to the property owners.

The contract of employment was not in writing but rested in parol. The plaintiff testified, in substance, that a Mr. Kerfoot came to him and stated that he was employed to get consents from the property owners allowing defendant, the Union Elevated Railroad Company, to construct its road upon certain streets in the city of Chicago, and asked him if he would not like to be employed in the same way. He said he would, and agreed to call upon Mr. Louderbeck, the representative of the company. He did so, and Mr. Louderbeck asked him if Mr. Kerfoot had explained what was wanted. He replied he had. Mr. Louderbeck then offered to pay him $500 a month for his services and $5000 additional in case of success, which offer he accepted. The following letter was read to Mr. Louderbeck upon his cross-examination, and he admitted that he had written the same:

             "CHICAGO, *December 22, 1894.*

"*W. K. Nixon, 85 Dearborn St., City:*

    "DEAR SIR—So there may be no misunderstanding in the future, I hereby reduce our agreement to writing. The Union Elevated Railroad Company will pay you at the rate of $500 per month for such time as may be necessary in their judgment, commencing December 22, 1894, you to use your best efforts during such appointment to obtain the signatures of property owners to their consent for the building of the proposed loop. In case the company is successful and your efforts have helped in securing the legal amount of frontage, within thirty days after the passage and acceptance of the ordinance you are to receive the further sum of $5000.

        "Yours truly,    D. H. LOUDERBECK, *President.*"

    Mr. Louderbeck, who was called as a witness upon behalf of the defendant, the Union Elevated Railroad Company, in referring to the interview with the plaintiff at the time of his employment, says: "The substance of the conversation was, that Mr. Nixon, being well acquainted with property owners in Chicago, could help to secure their frontage for the company without expense other than such compensation as we might arrange to give him, and on that basis I arranged with him at that time that in case the Union Elevated Railroad Company was successful in getting the loop, and he contributed to that success, we would pay him $500 per month, and later on, in case of success in obtaining the loop, $5000." The claim, therefore, that the undisputed evidence showed that the necessary consents were to be obtained without the company being obliged to make compensation therefor to the property owners is not sustained by the record.

    There was a disagreement between the plaintiff and Mr. Louderbeck as to the terms of the agreement, and the plaintiff's version thereof being fully corroborated by the letter of Mr. Louderbeck, we think the court was fully justified in finding, as it must be held to have found, (which finding of fact having been approved by the Appellate Court is binding upon this court,) that the agree-

ment of employment did not contain the qualification that the consents were to be obtained without the company being obliged to make compensation therefor to the property owners. If, therefore, it be conceded that the proposition as submitted stated a correct proposition of law based upon the testimony of Mr. Louderbeck alone, and should have been given, still, as the court properly held the testimony of Mr. Louderbeck overcome by the testimony of the plaintiff and the letter of Mr. Louderbeck, and found the facts different from those upon which the proposition was based, the error in refusing to hold such proposition to be the law, if error it was, is not reversible error, as it worked no injury to the defendant, as, had the court held the law as asked by the defendant, it would have availed it nothing, as the facts upon which it was based were held against it. We are therefore of the opinion the court did not err in refusing the first proposition submitted by the defendant.

*Second*—The court was requested to hold that the passage of an ordinance granting the right to the defendant, the Union Elevated Railroad Company, to build the entire line of the elevated railroad loop was a condition precedent to plaintiff's right to recover. The plaintiff was to receive the further sum of $5000 "in case the company is successful and your efforts have helped in securing the legal amount of frontage." We cannot agree with the contention of the defendant that the success of the company upon which the right of the plaintiff to receive his extra compensation depended, was the passage of an ordinance allowing it to build the entire line of the elevated railroad loop, but think the success referred to in the agreement of employment was the successful completion of the enterprise upon which the defendant was just entering,—*i. e.*, the successful completion of the elevated railroad loop; and if the company has attained that end and the plaintiff's efforts have contributed toward that end by helping to secure the required amount of front-

age, he is entitled to recover the increased remuneration. The Lake street side of the loop was completed at the time the contract of employment was made. It could not, therefore, have been intended that the plaintiff's extra compensation was dependent upon the company's acquiring an ordinance for the north side of the loop. The enterprise upon which the defendant, the Union Elevated Railroad Company, had entered, was the building of the elevated railroad loop. In its own name it obtained the ordinance for the Wabash avenue side of the loop and constructed the road on the east side. By an agreement with the Lake Street Elevated Railroad Company it acquired all the rights of that company to the structure on Lake street, and thereby acquired the north side of the loop. In connection with the Northwestern Elevated Railroad Company it obtained an ordinance on Fifth avenue. This ordinance was assigned to the defendant, and it constructed thereunder the west side of the loop. In connection with the Union Consolidated Elevated Railway Company it obtained the necessary consents on VanBuren street. These consents were used in obtaining the ordinance upon VanBuren street, which was afterwards transferred to the defendant, under which the defendant constructed the south side of the loop and thereby completed the entire loop system in accordance with its original undertaking, and the enterprise, upon the success of which the payment of the extra compensation to the plaintiff depended, was successfully carried out by the defendant. We are therefore of the opinion the court did not err in refusing the second and third propositions submitted by the defendant.

*Third*—The court was requested to hold that the contract sued on was opposed to public policy, and therefore invalid, by reason of the fact that the payment of the extra compensation to plaintiff was contingent on the passage of an ordinance permitting the construction of said elevated railroad loop. While by the terms of

199—16

the contract, as stated in the letter of Mr. Louderbeck, the extra compensation was not to be paid plaintiff until the ordinance permitting the use of the streets by the elevated railroad loop had been passed and accepted, it was not contemplated thereby that the plaintiff was to secure the passage of the ordinance. The ordinance could only be passed by the city council, based upon the necessary consents, and while the plaintiff was employed to obtain consents, he was not employed to deal with the city council but with the property owners. The obtaining of consents was legitimate and the employment of the plaintiff legal, and we fail to see how the action of the plaintiff in obtaining consents can be said to be contrary to public policy by reason of the fact, alone, that he was to be paid extra compensation for such services after the ordinance permitting the improvement had been passed. While a contract to obtain the passage of an ordinance, or an agreement to use personal influence upon the members of a city council to secure the passage of an ordinance, would be void, as against public policy, because, under our system of law and morals, influence to be exercised over a legislative body to secure the passage of a law or an ordinance cannot legally be made the subject matter of contract, a contract to obtain consents from the property owners abutting upon streets upon which improvements are to be made, payment for such services to be made after the ordinance permitting such improvement shall be passed, would not, when, as here, the person obtaining such consents had nothing to do with the legislative body or the passage of the ordinance, make the obtaining of such consents contrary to public policy, so that the person obtaining such consents could not recover the compensation agreed to be paid him therefor. The contention of the defendant proves too much, as, carried to its logical conclusion, every contract made by the defendant prior to the passage of the ordinance or ordinances under which the elevated railroad

loop was finally completed would be void, as all of such
contracts were made in contemplation of the fact that
an ordinance or ordinances would be passed by the city
council permitting the use of the streets of the city for
the construction of its loop.    The cases relied upon by
the defendant (*Crichfield* v. *Bermudez Asphalt Paving Co.* 174
Ill. 466, and *Marshall* v. *Baltimore and Ohio Railroad Co.* 16
How. 314, and other cases cited in its brief,) are based
upon agreements to render services in influencing legis-
lation, and are distinguishable from the case at bar and
are not in point.    We are therefore of the opinion the
court did not err in refusing the fourth proposition sub-
mitted by the defendant.

*Fourth*—It is assigned as error that the court held
that there could be a recovery in this case under a dec-
laration consisting only of the common counts.    The con-
tract was fully executed, and nothing was left to be done
by the defendant but to pay the money.    In *Sands* v. *Pot-
ter*, 165 Ill. 397, on page 407 we say:  "While a contract
continues executory the plaintiff must declare specially,
but when it has been fully performed on his part, and
nothing remains to be done under it except for the de-
fendant to pay, the plaintiff may, at his election, declare
generally in *indebitatus assumpsit.—Lane* v. *Adams*, 19 Ill.
167; *Throop* v. *Sherwood*, 4 Gilm. 92; *Tunnison* v. *Field*, 21
Ill. 107; *Adlard* v. *Muldoon*, 45 id. 193."    A recovery was
therefore properly allowed under the declaration.

*Fifth*—It is also assigned as error that the court held
that the plaintiff was entitled to recover interest.    There
is some evidence in the record tending to show unreason-
able and vexatious delay in payment of the claim, and
the finding of the Appellate Court upon that question, as
a question of fact, is conclusive upon this court, and we
cannot disturb the finding.

Finding no reversible error in this record the judg-
ment of the Appellate Court will be affirmed.   .

*Judgment affirmed.*