## Samuel Arion Lewis, Appellant, v. Harris Trust & Savings Bank and Paul W. Chapman, Appellees.

### Gen. No. 19,843.

1.    CONTRACTS, § 144*—*when not void as against public policy.* A contract employing a person to go to a city and deliver public addresses and to advocate before city improvement associations the desirability of the city voting a bond issue bearing a sufficient rate of interest to make the bonds salable to carry out the purpose of the city water board to purchase a water plant, the object of the employment being to enable and help his principal to purchase such bond issue or such portion thereof as could be obtained in case they were issued, *held* not void as against public policy.

2.    CONTRACTS, § 144*—*when not void as against public policy.* Where a contract is made by an agent to address himself to property owners on a subject in which the principal who employs the agent is interested for gain, when the property owners' consent is necessary to the action of an official representative body, and when it does not appear that the contract contemplates the exercise of personal solicitation or personal influence, or the acting by the agent in a secret manner, require any services at all with the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

official representative body, but on the other hand, the services are to be performed openly and publicly, and without the use of money, such a contract is good and valid and not against public policy.

3. CONTRACTS, § 136*—*determination of public policy of State.* The public policy of a State is to be found in its constitution and statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of its government officials.

4. MUNICIPAL COURT OF CHICAGO, § 13*—*presumption on motion to strike statement of claim.* In an action in the Municipal Court based on a written contract, where it cannot be presumed from the contract as set out in the statement of claim that it is illegal, on a motion to strike the statement of claim from the files the contract will be presumed legal, and it is for the defendant to make its illegality apparent.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed October 6, 1914.

WARWICK A. SHAW and LEWIS C. BALL, for appellant.

THEODORE CHAPMAN and CHARLES LEROY BROWN, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

By this appeal the appellant, plaintiff below, seeks to reverse a judgment of the Municipal Court, striking the plaintiff's second amended statement of claim from the files and entering judgment in favor of the defendants and against the plaintiff.

By the rules of the Municipal Court of Chicago, the statement of claim in first-class cases shall be filed in place of regular pleadings. The action was in assumpsit for the value of services which the plaintiff alleged were performed by him on behalf of the defendants under an oral contract. The motion to strike was in the nature of a demurrer to the plaintiff's sec-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative, Quarterly, same topic and section number.

Vol. CLXXXVIII  35

ond amended statement of claim, and plaintiff objected to the granting of the motion, and stood by his amended statement of claim. The question thus presented is whether the second amended statement of claim presents a good cause of action.

The questions presented and discussed by counsel in their printed and oral arguments is whether the agreement set forth in the second amended statement of claim is or is not contrary to public policy and void. No other question on the validity of the alleged contract, save that of public policy, could be raised legally, we think, for the reason that the plaintiff relies in his statement of claim upon a *quantum meruit* for the value of his services accepted by the defendants. At all events, counsel on both sides agree that the public policy question is the only question presented by the record, and that the statements of claim were stricken on the ground that the agreement set out was such a contract as the courts will refuse to enforce.

It appears from the statement of claim that the Omaha Water Company owned a water plant furnishing water to the city of Omaha which it did not desire to sell; that there was a "water board," a body of public officials, which had in view the purchase of the water plant and had voted a bond issue of $6,500,000, bearing interest at four per cent., payable in thirty years, on which to raise the money necessary for the purchase of the plant; and this issue of bonds had been approved by the people of Omaha, when the contract in question was made. The issue of bonds was not marketable because of the low rate of interest. The condition of the market then existing favored the sale of bonds bearing not less than four and one-half per cent. interest. If the bond issue was made to bear interest at four and one-half per cent., and the Omaha Water Company should change its attitude and exchange its plant for the bonds, it might be possible to obtain the bonds directly from the Water Company,

and plaintiff was employed to negotiate on behalf of defendants for the purchase of such issue or so much of it as could be obtained.  By the contract, plaintiff was employed to deliver public addresses and to bring to the attention of the twenty-eight improvement associations of Omaha, composed of property owners and taxpayers, the desirability of a bond issue bearing interest at the rate of four and one-half per cent. in order to carry out the purpose of the Water Board to purchase the water plant, and to do his work openly and not secretly, and to announce publicly that he was acting on behalf of defendants.  This is, in substance, the employment alleged.

The public policy of a State is to be found in its constitution and statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of its government officials.  The laws and public policy of the State permit and require the utmost freedom of contracting between competent parties, and it is only where a contract expressly contravenes the law or the known public policy of the State that courts will hold it void.  *Zeigler v. Illinois Trust & Savings Bank*, 245 Ill. 180.  As held in the *Zeigler* case: "There is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy.  Each case, as it arises, must be judged and determined according to its own peculiar circumstances."  Looking to the decisions of courts, where similar contracts were questioned on the ground of contravening public policy, we think it may be stated generally, as the result and trend of the decisions, that where a contract is made by an agent to address himself to property owners on a subject in which the principal who employs the agent is interested for gain, when the property owners' consent is necessary to the action  of an official representative body, and when it

does not appear that the contract contemplates the exercise of personal solicitation or personal influence, or the acting by the agent in a secret manner, require any services at all with the official representative body, but on the other hand, the services are to be performed openly and publicly, and without the use of money, such a contract is good and valid and not against public policy.

In *Union El. R. Co. v. Nixon,* 199 Ill. 235, it was held that an agreement to pay so much a month to a party to obtain frontage consents for a public improvement is not against public policy, even though extra pay is promised after the passage of the ordinance, if the party's efforts in obtaining consents have aided in the success of the enterprise, where the agent has nothing to do with the council, or the passage of the ordinance, except to get property owners' consents.

In *Paving Co. v. Botsford,* 56 Kan. 532, it was held that under chapter 99 of the Laws of 1887, of the State of Kansas, the action to be taken by the mayor and council of a city of the first class with respect to grading and paving depended to a great extent upon the consent of the owners of property fronting upon the street to be improved; and that it was competent for a paving company to employ attorneys and agents to give legal advice, and to collect and present facts as to the character and superior quality of the paving material which the company proposed to put in, to make arguments and openly and honestly endeavor to convince the reason and judgment of the property owners and the members of the city council that the interests of the owners and the public would be best subserved by the use of such paving material.

In *Houlton v. Nichol,* 93 Wis. 393, the plaintiff, a person of large experience in regard to Federal public lands, became satisfied that a certain class of lands that had been kept out of the market on account of a supposed claim under certain railroad grants could be legally thrown open to settlement, and entered into

an agreement with defendant, who was desirous of acquiring such lands, to instruct the latter in regard to the manner of procuring the same, and to do all that was necessary to have such lands thrown open to settlement, in consideration of a certain proportion of the value of the land acquired by defendant. It was held that the contract was not *per se* invalid as against public policy as a lobbying contract. An appeal to reason and nothing more before an official or an official board is not opposed to public policy.

This question is discussed in *McBratney v. Chandler*, 22 Kan. 692; *Kansas Pac. R. Co. v. McCoy*, 8 Kan. 538; *Marshall v. Baltimore & O. R. Co.*, 16 How. (U. S.) 314; *Tool Co. v. Norris*, 2 Wall. (U. S.) 45; *Trist v. Child*, 21 Wall. (U. S.) 441, and many other cases, and it is unnecessary to more than refer to them. There is no presumption from the contract as set out in the statement of claim that it was an illegal contract. The defendants admit having made the contract as alleged, the motion to strike being in the nature of a demurrer. The presumption is in favor of innocence, and it is for the defendants to make the illegality apparent.

Appellee relies strongly upon *Crichfield v. Bermudez Asphalt Pav. Co.*, 174 Ill. 466. The grounds upon which the contract sued on in that case was held void, were: First, that the appellants therein entered into the service of the appellee as lobbyists, or, in the language of some of the cases, as log-rollers; and second, that "the making of a contract to promote the levying of a public assessment, not for the purpose of securing to the public a needed improvement, but for the purpose of enabling a paving company to get a job, is not only against the public interest, but is abhorrent to all proper ideas of justice and honor."

We do not construe the contract as set forth in the statement of claim as being obnoxious to these objections. The case is easily and clearly to be distinguished

from the case made in the statement in many salient features which appear upon a careful reading of the contracts in connection with the circumstances shown and the services contracted for. *Hazelton v. Scheckells,* 202 U. S. 71, involved a contract of an entirely different character from the contract before us. Without taking the time to distinguish the many cases cited by counsel for appellee, for that would unduly extend this opinion, we have reached the conclusion that the contract sued on is not such a contract as the courts will refuse to enforce on its face as alleged.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*