ROBERT J. HANAVAN *et al.*, Plaintiffs-Appellees, *v.* CLARENCE W. DYE, Defendant-Appellant.

(No. 71-118; 

Third District—April 6, 1972.

Herbert M. Spector, of Rock Island, for appellant.

Robert A. Eagle, of Rock Island, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

An action was brought by the purchasers of a new house against the builder-vendor to recover a judgment for water damage caused by faulty construction. A counterclaim was filed for extra work done. The court found for the plaintiffs on their complaint, denied and dismissed the counterclaim, and entered judgment against the defendant for $588.30 and costs. The defendant has appealed.

The plaintiffs had bought the house in October of 1968 for $31,500.00 from the defendant, a building contractor, who had constructed it. Situated in Moline, Illinois, it was a split-level, and the lower level was completely exposed in the rear and partially exposed on the sides. The lower level included two bedrooms, a bathroom, a family room, and a recreation room. Two of the plaintiff's children used the lower level as their living quarters.

The plaintiffs moved into the house in November of 1968. In the spring of 1969 they began to find water in the lower level after rains. The problem became steadily worse through the summer and fall of 1969. By the spring of 1970, water was covering much of the lower level, all of which was carpeted, and was in places up to the plaintiffs' ankles. A neighbor observed water over the tennis shoes of one of the plaintiffs and over the first step of the stairway. Water entered the house about 25 times between May of 1969 and October of 1970.

The plaintiffs called the defendant every time it rained, and eventually began writing to him. He said he would take care of the water problem, but did not do so. The plaintiffs put extensions on the downspouts at the defendant's suggestion, but this did not correct the problem. In October of 1970 they had drain tile installed under the house, from the front wall to the back yard, and the water problem then ended.

Other difficulties were experienced with the house. The lower level was 10 or more degrees colder than the upper level. The thermostat was on the same wall as a heat outlet and would not function properly. Drafts could be felt. The plaintiffs complained to the defendant and he said he said he would take care of the heating problem, but no measures helped and the lower level remained cold.

The plaintiffs sought recovery, however, only for the water damage. They introduced proof of the cost of having the drain tile installed,

renting a machine to suck up water, plastering damaged areas, and removing, cleaning, and relaying carpeting. The total was $588.30, the amount of the judgment awarded them.

The contractor who installed the drain tile beneath the house expressed his belief that tile should have been put beneath the house when it was built because the lower level was to be living space and because anyone in that area could have water problems. The defendant explained that he had not thought drain tile was necessary because the lower level was partially exposed and the foundation was not low in the ground. The tiling contractor commented that "this is how water can fool you."

Appealing from the judgment against him, the defendant contends that he built the house for himself and had no contract to build it for the plaintiffs; that he did not tell the plaintiffs the house had drain tile or give them any express warranties; that Moline's building code did not call for tile and it was not negligence for him not to have installed tile; and that the judgment was erroneous, therefore, because in Illinois there is no implied warranty of fitness, condition, or quality on the part of the vendor in the sale of a new dwelling house. He contends also that the plaintiffs failed to make proper proof of damages to support the judgment.

Whether there is an implied warranty of habitability where the vendor of a new house is also the builder has been considered in several Illinois cases. In *Weck v. A:M Sunrise Construction Co.*, 36 Ill.App.2d 383, an implied warranty of this kind was recognized. In *Coutrakon v. Adams*, 39 Ill.App.2d 290, the existence of an implied warranty was denied. (See criticism of the latter case in Krause, "Products Liability and the Independent Contractor," 1964 U. of Ill. Law Forum 748 at 759.) In *Ehard v. Pistakee Builders, Inc.*, 111 Ill.App.2d 227, 232, the issue was avoided. The Illinois Supreme Court in *Coutrakon v. Adams*, 31 Ill.2d 189, left the question unresolved, affirming the Appellate Court's decision on other grounds. Therefore, the question being at present unresolved, it is for us to decide whether to recognize an implied warranty of habitability on the sale of a new house by the builder as in *Weck* or to reject any implied warranty theory as in *Coutrakon*.

In a number of other states the courts have taken the position that a builder-vendor may be held liable for defective construction on the theory of breach of an implied warranty of habitability or quality. The cases are collected and discussed in 25 A.L.R.3d 383. An extensive review of the cases appears also in Jaeger, "The Warranty of Habitability," 47 Chicago-Kent Law Rev. 1, 27—52. The author of this article, finding that "an implied warranty concept has been developed in an increasing number of decisions where the vendor of the new home is also the

builder," *id.* at 27, and predicting that these decisions will probably represent "the weight of authority in due course," *id.* at 45, comments: "The foregoing examination of the case law indicates that a distinct form of action is emerging which may be known, without reference to contract or tort, as an action for breach of constructive warranty." (*Id.* at 46.) Another review of the cases is presented in 7 Williston, Contracts (3d ed., Jaeger), Sec. 926A, where the decisions departing from the rule of *caveat emptor* are discussed and this is stated: "True, the courts which have given relief to the purchaser of a new house sold by the contractor-vendor have preferred to put their theory of recovery on the breach of an implied warranty of 'fitness for human habitation,' where there was no express warranty. This seems entirely in accord with the better reasoned and forward looking decisions in other fields of warranty." *Id.* at 813.

A number of law review articles have expressed approval of an implied warranty of fitness in the sale of new houses. In Haskell, "The Case for an Implied Warranty of Quality in Sales of Real Property," 53 Georgetown L. J. 633, 642 (1965), the author observes: "That the buyer should obtain an express warranty for his protection assumes a degree of sophistication on the buyer's part which frequently does not exist * * *. As for the question of the quantity of litigation which would result if an implied warranty of fitness for habitation were recognized in sales of real property—it seems that if the claims are just, that is what the courts are for." "Certainly the defect must be substantial if it is to be considered a breach of the warranty," he adds. (*Id.* at 652.) But he finds the trend to be in the direction of further protection for the purchaser of real property, the impelling justification being that "a fair price demands a sound product." *Id.* at 655.

In Bearman, "Caveat Emptor in Sales of Realty—Recent Assaults upon the Rule," 14 Vanderbilt L. Rev. 541, 572 (1961), the author states: "When the vendee buys his newly completed home from a builder-vendor, he is clearly relying directly upon the special skills of the individual as the builder for a workmanlike performance, even though he has no contract with the builder-vendor in his capacity as builder." He adds: "Inspection will be of little use, * * * both because of the expense and because the defects are usually hidden." (*Id.* at 574.) The latter point is made also in Gibson and Lounsberry, "Implied Warranties —Sales of a Completed House," 1 Cal. Western L. Rev. 110, 124 (1965): "There is, in fact, very little which even a skilled examiner can uncover in a defective home if he must conduct an inspection after the house has been completed, since most defects are usually found in the foundation." See also, Nielson, "Caveat Emptor in Sales of Real Property—Time for a

Reappraisal," 10 Ariz. L. Rev. 484 (1968); Stewart, "Implied Warranties in the Sale of New Houses," 26 U. Pitt. L. Rev. 862 (1965); Wells, Comment in 23 U. of Fla. L. Rev. 626 (1971); and Ramunno, "Implied Warranty of Fitness for Habitation in Sale of Residential Dwellings," 43 Denver L. Rev. 379, 386 (1966) where it is said regarding proof of damages: "It is submitted that if the property is capable of repair, the cost of the repairs should be used."

■■ It is our opinion that the *Weck* case should be followed rather than *Coutrakon,* and that an implied warranty of habitability should be recognized in cases where the contractor-builder sells directly to a lay purchaser such as exists in the case before us. It is our opinion, further, that the cost of remedying the defects or deficiencies is the proper measure of damages for defective or deficient construction. (*Mason v. Griffith,* 281 Ill. 246, 256; *Ingrande v. Higgins,* 49 Ill.App.2d 418; *Rehr v. West,* 333 Ill.App. 160.) Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

STOUDER, P. J., and ALLOY, J., concur.