ALICE M. PURDY, Petitioner-Appellant, *v.* C. H. STRONG ELEVATOR, INC., *et al.*, Respondents-Appellees.

(No. 74-140;

Second District (2nd Division)—June 30, 1975.

Nelson & Kilgus, of Morrison, for appellant.

George F. Nichols, of Dixon, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Lee County denying a petition for an order directing the issuance of a tax deed.

The property in question involves three lots along a railroad siding once owned by Strong Elevator, Inc. The elevator company had a fire and went bankrupt some years ago, as a result of which the real estate taxes for 1968 were not paid. In October, 1969, the lots were sold for delinquent taxes to one Long, who subsequently, in January, 1972, assigned the tax certificate to Alice M. Purdy, the petitioner here. Mrs. Purdy owned business property adjacent to the involved lots.

The period of redemption expired on July 15, 1972, and in April, 1972, Purdy served notice on the owners of record and by publication on unknown owners, that she would apply for a tax deed after the period of redemption had expired.

The respondent, Virginia Addington, resides on two lots adjacent to the lots involved here. She testified that when she learned the property was to be sold for taxes she determined to bid and went to the court

house for that purpose. However, she was unable to locate the place of the sale and in any event was not able to participate in the sale and make a bid. She later approached the Dixon National Bank, one of the defendants of record here, about the possibility of buying the property. They told her that they had no interest and referred her to the Borden Company who held a mortgage on the property. She made inquiry through her attorney and learned that the Borden Company, also one of the defendants of record here, did indeed have a mortgage on the real estate formerly owned by the elevator company, including the lots in question. Mrs. Addington testified that she then called the Real Estate Department of Borden Company in Columbus, Ohio, and talked with a Mr. Standly, the manager of that department. Her testimony was that she advised Mr. Standly that she wished to purchase the lots in question adjacent to her present lots but that "there were only so many days left" and if Borden's did not redeem it she would not be able to purchase it, "because it was sold by taxes." Her testimony was that Mr. Standly "told me what to do, he said you go to the court house and redeem it for them so that's what I did."

Pursuant to this conversation with Borden Company's real estate manager, Mrs. Addington went to the court house on June 12, 1972, and redeemed the property by paying the delinquent taxes and the current taxes. The next day she advised her lawyer of her action and of her conversation with Mr. Standly. The lawyer, George F. Nichols, telephoned Mr. Standly confirming Mrs. Addington's conversation with him and reaffirming her desire to purchase the mortgage. Subsequently Mrs. Addington arrived at a purchase price of $300 in discussion with Standly and this was confirmed by a letter dated August 4 transmitting a check for $300 to Standly, together with a proposed assignment of the mortgage. The assignment was actually executed and returned to Mrs. Addington's lawyer on September 22, 1972.

When Mrs. Purdy appeared on July 17 to have the tax deed issued it was discovered that Mrs. Addington had paid the taxes, thus blocking the issuance of the tax deed. The circuit court upheld the validity of the redemption and this appeal followed.

There is only one issue involved in this appeal—did Mrs. Addington have standing to redeem the property?

The Illinois Constitution guarantees the right of redemption in the following language (Ill. Const. art. IX, § 8 (1970)):

"§ 8. Tax Sales
\* \* \*

(b) The right of redemption from all sales of real estate for the non-payment of taxes or special assessments shall exist in

favor of owners and persons interested in such real estate for not less than two years following such sales. * * *" (This provision was unchanged from the 1870 Constitution.)

Prior to the 1973 amendment of section 253 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 734) this section did not specifically limit the right of redemption to owners and persons interested in the real estate but the courts, taking their cue from the above-quoted language of the Constitution had so held. They had, however, construed the provisions with regard to whom could redeem rather liberally. Thus, in the leading case of *Houston v. Buer*, 117 Ill. 324 (1886), the court denied the tax certificate holder's petition for a tax deed and upheld the previous owner's right to redeem under the following circumstances. Buer was the owner of certain property which was being managed for him by one Barger, as agent. Barger neglected to pay the taxes on the property for 1876 and 1877, and in 1879 one Houston bought the property for the delinquent taxes. In 1880 Barger died but prior to his death he had sold his business and all records to one Boyd. Boyd tried to get confirmation of the continuance of his agency from Buer and other clients but Buer failed to respond. Boyd then represented himself as Buer's agent, redeemed the property and took an assignment of the tax certificate in his own name. Subsequently Buer saw Boyd and ratified the agency of Boyd.

The supreme court held this to be a good redemption, saying that Boyd "had some color of authority to act in the premises," through his connection with the previous agent and by virtue of the fact his agency was afterwards ratified.

The trial court here was of the opinion that this case is in line with *Houston v. Buer* and Mrs. Addington could be regarded as having acted as an agent for Borden Company by following Mr. Standly's instructions to redeem the property on which Borden's had a mortgage. It was an act beneficial to them as well as to her and they subsequently ratified it by accepting her check and assigning the mortgage.

The petitioner, however, contends that at the time of the redemption Mrs. Addington was a stranger to the title and that under the facts adduced at the hearing she was not an agent for Borden's and she, therefore, had no standing to redeem.

It is conceded by the petitioner that record title is not required to redeem. While the case of *Weiner v. Jobst*, 22 Ill.2d 11, held that the owner could not redeem because of a defect in the chain of the record title, the holding in that case was not followed in subsequent appellate court cases. Where a clear, equitable right appeared to exist in favor of the person redeeming, the courts invoked distinctions to avoid the application of the *Weiner v. Jobst* decision. Thus, in *In re Application of County*

*Collector,* 72 Ill.App.2d 272, an executor was held to have a redeemable interest; in *In re Application of County Treasurer,* 63 Ill.App.2d 135, an heir of a contract purchaser was allowed standing to redeem. These cases are in line with the earlier Illinois cases such as *Franzen v. Donichy,* 9 Ill.2d 382, where the grantee of a contract vendee was held to be a holder of an equitable interest in the real estate and allowed to redeem.

In 1973, the doctrine of *Weiner v. Jobst* was repudiated by an amendment to section 253 of the Revenue Act of 1939 providing that the person seeking to redeem need not show a recorded or filed interest (other than undisclosed beneficiaries of a land trust).

The question, therefore, is whether Mrs. Addington had such interest when she redeemed, as would give her standing to redeem. On the authority of *Houston v. Buer* she would have such interest if she was indeed the agent of the mortgagee, it being conceded that Borden did have the required interest. The case then comes down to a matter of proof as to the quantity and quality of the interest Mrs. Addington had at the time she redeemed. It is pointed out by the petitioner that Mrs. Addington had been interested in the property on her own behalf from the beginning and had tried to buy it at the tax sale but was apparently not able to present her bid in time. Her interest, of course, derived from the fact that the property was adjacent to her own residence. Therefore, the petitioner argues, it is apparent that Mrs. Addington did not act on behalf of Borden when she redeemed the property but was acting for herself and the subsequent assignment of the mortgage only confirms her prior personal interest in the property before it was redeemed. It is not contended that Mrs. Addington was a general agent for Borden or an agent for any other purpose or transaction than this particular one.

On the other hand, however, Borden's did have an interest. They had no agent of their own on the scene, and the expiration of the redemption period being imminent, and they wishing to derive something out of the mortgage, it was not far-fetched to believe that they would make a local person who wished to purchase the mortgage their agent to redeem from the tax sale so that this could be accomplished.

■■ This was the burden of Mrs. Addington's testimony. She said in her testimony that she believed she and Borden's were working together and she was acting on their behalf as well as her own. It must be conceded that a stranger to the title, having no equitable interest, cannot redeem as agent without some color of authority from the principal. But, in this case, there is no doubt that Mr. Standly and Mrs. Addington did have conversations about purchasing the mortgage and the necessity of redeeming the taxes. Mrs. Addington testified that Standly told her to go and pay the taxes and redeem the property and since she had no title, legal or equitable, to base such an action on, the logic of the situation

favors the implication of a special or limited agency to act on behalf of Borden's. Such a construction is not, it seems to us, against the manifest weight of the evidence but is rather in line with such evidence as there was. A contrary theory of an unauthorized person acting strictly in her own interest is merely an interpretation by the petitioner. We think this construction of the circumstances is overcome by Mrs. Addington's direct testimony that she acted on the basis of her conversation with Standly that she should go to the court house and pay the taxes to redeem the property.

The inference from the conversation that she was acting on behalf of Borden's is not defeated by the fact that it was in her own interest to do so. The court found sufficient evidence of agency to give her standing and we do not feel such finding was against the manifest weight of the evidence.

The judgment of the trial court is therefore affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.