MARVIN R. CONYERS *et al.*, Plaintiffs-Appellants, *v.* JOHN J. MOLLOY, Defendant-Appellee.

Fourth District   No. 14016

Opinion filed June 27, 1977.

GREEN, J., concurring.

Geisler & Waks, of Decatur (Asher O. Geisler, of counsel), for appellants.

Downing, Smith, Jorgensen & Uhl, of Decatur (M. D. Jorgensen, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:
Does an implied warrant of habitability exist in Illinois?
If so—can it be waived?

Let us see.

Mr. and Mrs. Conyers purchased a house from Mr. Molloy, a builder. They alleged that—due to a lack of ventilation in the attic—water damage resulted in the house not being fit for habitation. Also, they say, they had no experience as housebuilders and relied on Molloy's expertise. A contract had been entered into and the following language is contained in paragraph 18 thereof:

> "There are no warranties on either house except those manufacturers warranties that are in effect."

The Conyers' further allege that such language did not waive the implied warranty of habitability, but, if it did, such was null and void as against public policy.

Conyers' complaint was dismissed with prejudice, but no reasons were given on the record.

Although the Conyers' and Molloy each define the issues differently, we believe that the questions posed are more logically phrased in this order: (1) whether an implied warranty of habitability exists in Illinois; (2) whether the waiver provision in the contract for sale waived that warranty; and (3) if the waiver provision effectively waived the warranty, is the provision void as against the public policy of Illinois.

POINT I. There is a conflict among the Illinois appellate courts on the issue of implied warranty of habitability. In *Weck v. A:M Sunrise Construction Co.* (1962), 36 Ill. App. 2d 383, 184 N.E.2d 728, the First District Appellate Court recognized an action on an implied warranty of habitability where the contract for sale was signed before the completion of construction. The opinion quoted extensively from an English case, *Miller v. Cannon Hill Estates, Ltd.*, 2 K.B. 113 (1931). The distinction between a completed and an uncompleted house was not very rational but served generally as a wedge in the assault on the *caveat emptor* doctrine. See Jaeger, *Warranty of Habitability, part 2*, 47 Chi.-Kent L. Rev. 1, 27-52.

The next year another district found no such action in a case that also involved an uncompleted house. (*Coutrakon v. Adams* (1963), 39 Ill. App. 2d 290, 188 N.E.2d 780.) The court applied the doctrine of merger of the contract into the deed and the traditional doctrine of *caveat emptor*. The supreme court affirmed in *Coutrakon v. Adams* (1964), 31 Ill. 2d 189, 201 N.E.2d 100, but specifically declined to decide whether an implied warranty of habitability existed in Illinois. It should be noted, however, that the supreme court approved an implied warranty of habitability in the landlord-tenant context. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208.) Many of the reasons cited in *Little* for an implied warranty are applicable to the new home buyer. The view that there is no

implied warranty was followed by the Fifth District Appellate Court in *Narup v. Higgins* (1964), 51 Ill. App. 2d 102, 200 N.E.2d 922.

In 1972, the Third District Appellate Court examined the question and in *Hanavan v. Dye* (1972), 4 Ill. App. 3d 576, 281 N.E.2d 398, they stated that an implied warranty of habitability would be recognized. The court cited the massive support for the warranty in the Law Reviews and the accelerating trend to recognize the warranty in other states. The cases are collected in Annot., 25 A.L.R.3d 383 (1969). The Third District has followed this position in *Garcia v. Hynes & Howes Real Estate Inc.* (1975), 29 Ill. App. 3d 479, 331 N.E.2d 630, and *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 334 N.E.2d 431. No other district has passed upon the question recently.

■■ Some of the reasons for the recognition of the warranty are set out in *Wawak v. Stewart* (1970), 247 Ark. 1093, 449 S.W.2d 922. That court stated that the contrast between the law of personal property and the law of real property is so great as to be indefensible. Why should a $10 iron have a warranty of fitness while the biggest purchase ever made by a majority of families, their home, is unprotected? The relationship of a mass producer-builder-seller and the purchaser is vastly different from the relationships from which the rule of *caveat emptor* arose. In the early days of the common law, the main concern of the parties was the land, and whatever structures were on it could be easily repaired by the new landholder. Today, the purpose is to buy a dwelling, rather than land per se, and most purchasers are not equipped to undertake major repairs. Like the buyer of an automobile, the purchaser of a house generally has neither the bargaining power to insist on a warranty nor the expertise to detect what could be wrong. Finally, but certainly not least, it seems only fair to put the burden of repairing defects in construction on the person who is (1) responsible for the defects, (2) is in a position to repair them and (3) is in a position to spread the costs of the repair. This is especially true since a significant amount of the defects can be so buried in the construction that it could be impossible to find them before buying, no matter how careful or thorough the inspection. In fact, the consensus is that there is no defensible reason why the warranty should not be recognized, save the argument that such change should be for the legislature. In view of the iniquities created by the judge-made rule of *caveat emptor*, that hardly seems an answer. As we earlier noted, the supreme court in *Little* changed the rule judicially in the landlord-tenant context. Consequently, we hold that an implied warranty of habitability in this context does exist and that a breach thereof is actionable.

POINT II. Where an implied warranty is recognized, can the disclaimer be far behind?

On appeal plaintiffs present three arguments as to why paragraph 18 of the contract for sale should not be construed to be a waiver of the implied warranty of habitability. Defendant's main line of defense here is that plaintiffs cannot raise a new theory on appeal.

■■ A thorough review of the record on appeal discloses no indication of what theories were raised in the lower court. No briefs were submitted to the lower court, no reasons are given for the trial court's dismissal. There is no way to determine from the record whether these issues were raised. What is clear, however, is that the pleadings themselves *do* raise the issue! The general rule is that pleadings are to be construed liberally and if, on the facts alleged and reasonable inferences therefrom, there is demonstrated any possibility of recovery, the order of dismissal must be vacated. *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37.

The Conyers argue that the waiver or disclaimer provision should be strictly construed against the sellers and, so construed, does not waive the. implied warranty of habitability. Warranties implied by law for the protection of consumers are a matter of public policy and it may therefore follow that they should not be considered waived except by clear and specific language. *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.* (1966), 68 Ill. App. 2d 297, 216 N.E.2d 282.

Plaintiffs cite several cases where warranties were construed as not excluding the implied warranty of habitability. For instance, in *Wawak* the contract stated: "Buyer certifies that he has inspected the property and that he is not relying upon any warranties, representations or statements of Agent or Seller as to the age or physical condition of improvements." (*Wawak v. Stewart* (1970), 247 Ark. 1093, 449 S.W.2d 922, 926.) The Arkansas court construed this as excluding only those defects which could have been discovered by the inspection of a purchaser of average experience.

In *Tibbitts v. Openshaw* (1967), 18 Utah 2d 442, 425 P.2d 160, the contract for sale contained a "present condition" clause. The Utah court, without analysis, construed that an "as is" clause, held that plaintiff had failed to prove by clear and convincing evidence that this was not the understanding of the parties and agreed with the trial court that the case was moot!

The clause in question here states: *"There are no warranties on either house except those manufacturers warranties that are in effect."* Seller argues that this is so clear that it needs no construction, strict or otherwise. Buyers argue that it should be construed against the seller as excluding only *express* warranties which arise from the conduct and words of the parties and not warranties *implied* by law. But we can find no case support for such a construction. It could be argued that the policy behind

the warranty is so important that no waiver should be presumed without express reference to the warranty of habitability. But this would be further than even the Uniform Commercial Code has gone in regard to the sale of goods, since under it the warranty of merchantability may be excluded by language such as "there are no warranties which extend beyond the description on the face hereof" (Ill. Rev. Stat. 1975, ch. 26, par. 2—316(2).).

Plaintiffs' second argument is an argument by analogy to the warranty of merchantability in the sale of goods. They argue that the disclaimer or waiver cannot be effective unless conspicuous and brought to the attention of the buyer and agreed to by him. They cite the Colorado case of *Hiigel v. General Motors Corp.* (1975), Colo. 544 P.2d 983. *Hiigel* involved a warranty disclaimer as broad as the one in the case at bar. The Colorado Supreme Court affirmed its position that, in consumer cases, such a disclaimer does not negate an implied warranty unless it is brought to the attention of the buyer and agreed to by him. This is obviously a judicial construction as the statute involved (namely the Uniform Commercial Code) would allow such a disclaimer. But no Illinois case has been cited reflecting similar interpretation.

Buyers' last argument on this point is that seller could be construed to be a manufacturer and, therefore, the disclaimer itself would not negate the warranty, especially if the disclaimer is to be construed against seller. Buyers cite *Dolese & Shepard Co. v. O'Connell* (1912), 257 Ill. 43, 100 N.E. 235. There the court was interpreting the word "manufacturer" as it was used in a tax statute. The plaintiff was not a house builder but in determining the meaning of "manufacturer" the court states:

> "Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure such as a house, road or bridge." (257 Ill. 43, 45, 100 N.E. 235, 236.)

Although the case is distinguishable on its facts, that does not dispose of buyers' logical argument. One need not have a factory to be a manufacturer!

■■ To our view, the alleged waiver here was overbroad, too general and too unspecific to adequately put the plaintiffs on notice that they were waiving their warranty of habitability.

■■ Defendant also raises other contentions. He asks this court to take note of plaintiffs' answer to the interrogatories that he is a used car salesman and therefore was aware of implied warranties and the significance of the contract he was signing. He argues that maybe paragraph 18 was inserted by plaintiffs and therefore should be construed against

them and not against the defendant. But these appear to be factual arguments which (however relevant in a trial on the matter) cannot be dispositive of the standing of the complaint.

POINT III. Plaintiffs argue that this disclaimer, if sufficient, should be declared void as against public policy. Here, all of the arguments to begin with in favor of the warranty would support the proposition that it should not be so easy to avoid. Plaintiffs cite the landmark case of *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N.J. 358, 161 A.2d 69, as an example of a disclaimer of warranty (for a new car) which was struck down as oppressive and unconscionable. The gross inequality of bargaining power was the basis for the decision. Plaintiffs also cite *Haley v. Merit Chevrolet, Inc.* (1966), 67 Ill. App. 2d 19, 214 N.E.2d 347, where the court discussed the question of whether an express warranty (which disclaimed any implied warranties and limited damages to replacement of parts) barred the strict liability action. They held that it did not—because the public policy reasons behind the imposition of strict liability prohibited the waiver. As defendant points out, although there was a count for breach of an implied warranty, the court did not specifically state whether the disclaimer was a defense to that action. Perhaps the court, having declared the warranty provisions void, saw no reason to declare it valid for one reason, although void for another!

Defendant argues that the public policy of the State requires the utmost freedom of contract and cites *Lewis v. Harris Trust & Savings Bank* (1914), 188 Ill. App. 544. The date of the case is not without significance. *Haley*, at least, tells us that freedom to contract is not so broad as it might once have been. Defendant cites *Tibbitts* as a case where freedom to contract reigned. But *Tibbitts*, with no discussion of the issues of public policy, is not much aid.

No court has yet held that disclaimers are against public policy although they have not been favored and are frequently unsuccessful in disclaiming the implied warranty. A North Carolina court, while finding that the disclaimer did not waive the implied warranty, nevertheless said that there is no question but that the parties could agree to waive it. *Griffin v. Wheeler-Leonard & Co.* (1976), 290 N.C. 185, 225 S.E.2d 557.

■■ We are of the conclusionary opinion that no public policy of Illinois is offended or violated by a proper waiver or disclaimer to an implied warranty of habitability as here revealed in the record before us.

To recapitulate:

I. An implied warranty of habitability between builder-seller and buyer does exist in Illinois;

II. The contract disclaimer here is insufficient to adequately apprise the buyers of the implied warranty of habitability that they are ostensibly waiving; and

III. The public policy of Illinois does not prohibit a waiver or disclaimer of an implied warranty of habitability if such renunciation is sufficiently specific to adequately apprise the buyer of what he is waiving.

The trial court's judgment of dismissal of the complaint with prejudice is reversed and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

CRAVEN, P. J., concurs.

Mr. JUSTICE GREEN, concurring:

I agree with the majority that the order dismissing the complaint should be reversed and the case remanded. I also agree that the complaint states a cause of action for breach of implied warranty of habitability and that the purported disclaimer in the contract attached to the complaint is too broad to waive that warranty.

The disclaimer fails only because of lack of specificity. I do not agree that the provision of the disclaimer which excepts "manufacturers' warranties" was intended to refer to a warranty of habitability or has the effect of excluding such a warranty from the disclaimer.