(No. 50206.— )

RAYMOND S. PETERSEN *et al.*, Appellees, v. HUB-SCHMAN CONSTRUCTION CO., INC., Appellant.

*Opinion filed May 18, 1979.*

34

Jerome H. Torshen, of Jerome H. Torshen, Ltd., of Chicago, and Paul Bernstein and Henry A. Waller, of Chicago, for appellant.

Stephen H. Katz, of Waukegan, for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the dual issues of "implied warranty of habitability" and "substantial performance" as they apply to a contract of sale of a new home by a builder-vendor. The purchasers, Raymond S. Petersen and Delores E. Petersen, sued the builder-vendor, Hubschman Construction Company, Inc., in the circuit court of Lake County for the return of the $10,000 earnest money they had paid on the contract for the purchase of a new house, and for the value of the labor and materials supplied by Petersen. The trial court entered judgment in favor of the plaintiffs for $19,000. The appellate court affirmed. (53 Ill. App. 3d 626.) We granted leave to appeal.

In April 1972, the plaintiffs, Raymond and Delores Petersen, entered into a $71,000 contract with the defendant, Hubschman Construction Company, Inc., for the purchase of a piece of land and for the construction of a new home on that land. Later, the parties agreed to an offset from the contract price for work to be done on the home by Petersen. The plaintiffs paid $10,000 earnest money. In the fall of 1972 the Petersens became dissatisfied with Hubschman's performance, and Hubschman later agreed to repair or correct numerous items on a "punch

list" but failed to satisfactorily carry out this agreement. The trial court found that the defects included: a basement floor pitched in the wrong direction away from a drain; improperly installed siding; a defective and ill-fitting bay window; a seriously defective front door and the door frame; and deterioration and "nail-popping" in the drywall on the interior. Testimony at the trial by the Petersens and by one of Hubschman's former employees indicated that repair of these items would involve major amounts of work. However, no one disputes that the house was at least habitable in that the Petersens could live in it and it was not dangerously unsafe. The Petersens proposed that Hubschman deposit $1,000 in escrow to guarantee completion of the repairs, but the suggestion was rejected. The Petersens refused to accept the home, and no closing of the transaction occurred; that is, the balance of the purchase price was not paid and no deed was delivered. Hubschman then invoked the contract forfeiture provision and notified the Petersens that they had forfeited both the $10,000 deposit and approximately $9,000 worth of labor and materials supplied by Petersen. The Petersens sued Hubschman. The trial court ruled that there were "defects in substance in the construction" of the house and that Hubschman had not substantially performed and could not declare a forfeiture. The court held that the Petersens were entitled to recover the earnest money and the value of the labor and materials provided.

Usually it is the builder-vendor who urges that, by reason of *caveat emptor* or merger, there is no warranty which the vendee of a new house can assert against a builder-vendor. In our case, however, it is the builder-vendor who urges the existence of the implied warranty of habitability. Hubschman, however, asserts that the implied warranty of habitability can be asserted by a vendee of a new house only if the defects in the structure render it unfit for habitation. Since in our case the defects

complained of did not render the house uninhabitable, Hubschman contends that the trial court erred in ruling in favor of the Petersens. In this regard, Hubschman relies on *Goggin v. Fox Valley Construction Corp.* (1977), 48 Ill. App. 3d 103. In that case the court, after remanding the case to the trial court, stated, in *dicta*, what that court conceived to be the nature of the warranty of habitability as follows:

> "The primary function of a new home is to shelter its inhabitants from the elements. If a new home does not keep out the elements because of a substantial defect of construction, such a home is not habitable within the meaning of the implied warranty of habitability. [Citation.] Another function of a new home is to provide its inhabitants with a reasonably safe place to live, without fear of injury to person, health, safety, or property. If a new home is not structurally sound because of a substantial defect of construction, such a home is not habitable ***. If a new home is not aesthetically satisfying because of a defect of construction, such a defect should not be considered as making the home uninhabitable."
> *Goggin v. Fox Valley Construction Corp.* (1977), 48 Ill. App. 3d 103, 106.

Ordinarily, it is the position of the buyer that *caveat emptor* or merger does not prohibit recovery from a builder-vendor for latent defects in a new house because of the warranty of habitability. However, in our case, the Petersens contend that the warranty of habitability is not involved since title to the property had not passed to them. It is their position that the builder-vendor had not substantially performed the contract to construct the new house and therefore they were entitled to repudiate the contract and to recover a money judgment.

This court has not considered the implied warranty of

habitability as it relates to a contract for sale of a new house by a builder-vendor. That question was involved in *Coutrakon v. Adams* (1964), 31 Ill. 2d 189, but this court decided that case on other grounds. This court has recognized an implied warranty of habitability in a landlord-tenant relationship. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351.) The appellate courts of this State, however, have had the opportunity on several occasions to consider the implied warranty of habitability in cases involving the sale of new homes by a builder-vendor, but the results have not been uniform. See *Weck v. A:M Sunrise Construction Co.* (1962), 36 Ill. App. 2d 383; *Coutrakon v. Adams* (1963), 39 Ill. App. 2d 290; *Narup v. Higgins* (1964), 51 Ill. App. 2d 102; *Hanavan v. Dye* (1972), 4 Ill. App. 3d 576; *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479; *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17; *Goggin v. Fox Valley Construction Corp.* (1977), 48 Ill. App. 3d 103.

The implied warranty of habitability in cases involving the sale of new homes by a builder-vendor is a judicial innovation of rather recent origin used to avoid the harshness of *caveat emptor* and the doctrine of merger and to afford a degree of relief to vendees of new homes who subsequently discover latent defects in the structure. This represents a distinct departure from accepted principles of real estate law that were based on reasons founded in antiquity. The vendee took the property at his risk. If he failed to discover defects, *caveat emptor* prevented him from maintaining an action against the vendor. The principle of merger produced the same result. All agreements between a vendee and the vendor were said to have merged in the deed, and if reservations were not contained in that instrument the doctrine of merger would prevent relief to the aggrieved vendee after receipt of the deed. (See Roeser, *The Implied Warranty of Habitability in the Sale of New Housing: The Trend in Illinois,* 1978 S.I.U.

L.J. 178.) In Illinois, however, certain exceptions to the merger doctrine have been created. Reasoning that the merger doctrine evolved solely to protect the security of land titles, the Illinois courts have held that when the deed embraced and contained all of the subjects of the executory contract, the contract merged with the deed. However, an executory agreement for the performance of separate and distinct provisions did not merge with the deed. The prior contract is superseded only as to such of its provisions as are covered by the conveyance made pursuant to its terms. *Fitzpatrick v. Allied Contracting Co.* (1962), 24 Ill. 2d 448; *Chicago Title & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78; *Trapp v. Gordon* (1937), 366 Ill. 102; *Biewer v. Mueller* (1912), 254 Ill. 315; *Shelby v. Chicago & Eastern Illinois R.R. Co.* (1892), 143 Ill. 385; *Laflin v. Howe* (1885), 112 Ill. 253; *Ludeke v. Sutherland* (1877), 87 Ill. 481; *Brownell v. Quinn* (1964), 47 Ill. App. 2d 206.

Although of recent origin, the implied warranty of habitability has found substantial acceptance in the various jurisdictions, and the commentators have voiced their approval and have examined the nature and basis of the implied warranty. See cases collected in Annot., 25 A.L.R.3d 383 (1969); see also Bearman, *Caveat Emptor In Sales Of Realty—Recent Assaults Upon The Rule,* 14 Vand. L. Rev. 541 (1961); Roberts, *The Case Of The Unwary Home Buyer: The Housing Merchant Did It,* 52 Cornell L.Q. 835 (1967); Haskell, *The Case For An Implied Warranty Of Quality In Sales Of Real Property,* 53 Geo. L.J. 633 (1965); Jaeger, *The Warranty of Habitability,* 46 Chi.-Kent L. Rev. 123 (1969); 47 Chi.-Kent L. Rev. 1 (1970).

Because of the vast change that has taken place in the method of constructing and marketing new houses, we feel that it is appropriate to hold that in the sale of a new house by a builder-vendor, there is an implied warranty of

habitability which will support an action against the builder-vendor by the vendee for latent defects and which will avoid the unjust results of *caveat emptor* and the doctrine of merger. Many new houses are, in a sense, now mass produced. The vendee buys in many instances from a model home or from predrawn plans. The nature of the construction methods is such that a vendee has little or no opportunity to inspect. The vendee is making a major investment, in many instances the largest single investment of his life. He is usually not knowledgeable in construction practices and, to a substantial degree, must rely upon the integrity and the skill of the builder-vendor, who is in the business of building and selling houses. The vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a residence.

Many of the cases have held that the warranty of habitability will be applied for the protection of the vendee only when the house he contracts to purchase is not completed at the time of the execution of the contract. The reasoning is that, if it is a completed house, the vendee has an opportunity to make a complete inspection for defects before signing the contract. We do not agree with this reasoning. In most instances, the latent defects would not be discoverable by a vendee whether the house is complete or incomplete at the time the contract is entered into. The same reliance must be placed on the integrity and skill of the builder-vendor in the purchase of a completed house as in the purchase of an uncompleted one. The vendee should be permitted to recover for latent defects in either case. In both instances the builder-vendor is selling a house which he knows will be used as a home. The vendee's expectation that it will be reasonably suitable for that purpose is a reasonable one, whether or not the house is completed at the time the contract is executed.

In this court the vendees (the Petersens) urge that the implied warranty of habitability is not involved and that it is not needed, since in our case the deed has not been delivered and the contract has not merged in the deed. The implied warranty does not arise as a result of the execution of the deed. It arises by virtue of the execution of the agreement between the vendor and the vendee. If that agreement would have contained express covenants concerning the quality of construction they would not have merged in the deed, but would have continued as a collateral undertaking. In *Brownell v. Quinn* (1964), 47 Ill. App. 2d 206, 208-09, it was held that a covenant to construct a building in a "neat and workmanlike" manner did not merge in the deed because the delivery of the deed did not fulfill that provision of the contract. The implied warranty, in a similar manner, exists as an independent undertaking collateral to the covenant to convey. As a matter of public policy it relaxes the rule of *caveat emptor* and the doctrine of merger in the special situation we are now discussing. It is implied as a separate covenant between the builder-vendor and the vendee because of the unusual dependent relationship of the vendee to the vendor. The implied warranty arises with the execution of the contract and survives the delivery of the deed. It is an implied covenant by the builder-vendor that the house which he contracts to build and to convey to the vendee is reasonably suitable for its intended use.

What we have just said evidences our disagreement with the narrow interpretation of the implied warranty of habitability urged by Hubschman and stated by the appellate court in *Goggin*. The mere fact that the house is capable of being inhabited does not satisfy the implied warranty. The use of the term "habitability" is perhaps unfortunate. Because of its imprecise meaning it is susceptible of misconstruction. It would more accurately convey the meaning of the warranty as used in this context

if it were to be phrased in language similar to that used in the Uniform Commercial Code, warranty of merchantability, or warranty of fitness for a particular purpose. See Ill. Rev. Stat. 1977, ch. 26, pars. 2–314, 2–315.

In fact, by drawing an analogy to the provisions of the Uniform Commercial Code, it has been suggested:

> "A solution to the problems created by the structural and habitability limitations is provided by characterizing the warranty as one of merchantability rather than one of habitability. Using the Uniform Commercial Code by analogy, the builder-vendor would guarantee that, upon sale, the house would be of fair average quality, that it would pass without objection in the building trade, and that it would be fit for the ordinary purpose of living in it.
>
> This warranty would suit the expectations and needs of both parties. *** Some courts have already moved in this direction. [*Pollard v. Saxe & Yolles Development Co.* (1974), 12 Cal. 3d 374, 525 P.2d 88, 115 Cal. Rptr. 648; *Wright v. Creative Corp.* (1972), 30 Colo. App. 575, 498 P.2d 1179; *Gable v. Silver* (Fla. App. 1972), 258 So. 2d 11; *Smith v. Old Warson Development Co.* (Mo. 1972), 479 S.W.2d 795; *Schipper v. Levitt & Sons* (1965), 44 N.J. 70, 207 A.2d 314; *Yepsen v. Burgess* (1974), 269 Or. 635, 525 P.2d 1019; *Rothberg v. Olenik* (1970), 128 Vt. 295, 262 A.2d 461.]" Comment, *Washington's New Home Implied Warranty of Habitability—Explanation and Model Statute*, 54 Wash. L. Rev. 185, 211-12 (1978). (Footnotes omitted except cases cited in footnote 138, bracketed above.)

Applying the reasoning of the above suggestion to the limited context of our case, we hold that implied in the contract for sale from the builder-vendor to the vendees is a warranty that the house, when completed and conveyed to the vendees, would be reasonably suited for its intended use. This implied warranty, of course, extends only to latent defects which interfere with this legitimate expectation.

Reference to the Uniform Commercial Code concern-

ing the nature of the implied warranty invites consideration of the effect of provisions in a contract disclaiming the existence of such an implied warranty. (See Ill. Rev. Stat. 1977, ch. 26, par. 2–315 for disclaimers under the Code.) Although the implied warranty of habitability is a creature of public policy, we do not consider a knowing disclaimer of the implied warranty to be against the public policy of this State. However, we do hold that any such a disclaimer must be strictly construed against the builder-vendor. (See *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17.) We refer to the well-reasoned opinion of the Supreme Court of Missouri in *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879, where it was held that "boilerplate" clauses, however worded, are rendered ineffective in such a disclaimer (564 S.W.2d 879, 881), and the court further stated:

> "[O]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied." (Emphasis in original.) *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879, 881 n.4.

Hubschman argues that since the house was habitable the Petersens must fulfill the contract to purchase and are only entitled to have the defects repaired or to damages if the builder fails to repair. We stated above that the implied warranty arose out of the execution of the·contract for sale. At the time the Petersens repudiated the contract, it was executory and substantial performance of it, including the implied warranty, by Hubschman was a constructive

condition to performance by the Petersens. The trial court found that "there were defects in substance in the construction" of the house and held that, under the circumstances of the case, Hubschman could not rely on substantial performance in declaring a forfeiture. It would be manifestly unjust to require the Petersens to accept a house in which "there were defects in substance in construction" and to settle for damages. That is not what they had bargained for. They contracted to pay for a house reasonably fit for its intended use, not for a house with substantial defects plus damages. "It is substantial performance of what the builder promised to do, of the construction work, \*\*\* that is the 'condition' of the [vendee's] duty to pay." (3A A. Corbin, *Contracts* 314 (1960).) If a contractor builds a house on his own land for sale to a buyer, a departure from the plans will more readily be held to be sufficient reason for justifying rejection by the buyer than if the house would have been built on the "buyer's" land. If the defective house is built on the land of the contractor it belongs to him and depriving him of the contract price does not deprive him of the value of his labor and materials. (3A A. Corbin, *Contracts* 314, 344-45 (1960).) We do not decide in this case what the appropriate remedy would have been if the defects had not been discovered until after the deed had been delivered. We also do not decide whether there is an implied warranty when the builder builds the house for another on the "buyer's" land.

The question of whether there has been substantial performance of the terms and conditions of a contract sufficient to justify a judgment in favor of the builder for the contract price is always a question of fact. (3A A. Corbin, *Contracts* 314, 318 (1960).) In this case the court held that Hubschman had not substantially performed, and the facts recited by the court in its order support that determination. Since the house was constructed on land

owned by Hubschman, he was in a position to recover for his labor and materials through the resale of the house. There is some indication in this case that Hubschman has, in fact, resold the house. The circuit court of Lake County therefore did not err in treating the contract as repudiated by the Petersens and in entering a money judgment in their favor. The judgment of the appellate court is therefore affirmed.

*Judgment affirmed.*