RICHARD W. KRAMP *et al.*, Plaintiffs-Appellants, *v.* SHOWCASE BUILDERS *et al.*, Defendants-Appellees.

Second District    No. 79-514

Opinion filed June 9, 1981.

Ehrlich, Bundesen, Broecker, Hoffenberg and Seraphin, of Geneva, for appellants.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This appeal arises from the dismissal of counts V and VIII of plaintiffs' amended complaint by the Circuit Court of Kane County in which they allege that the defendants, Steven Fitzsimmons and William Fisher, had breached an implied warranty of habitability with regard to subdivided housing lots purchased by the plaintiffs. The plaintiffs, purchasers of residential lots and homes in Middlecreek subdivision of St. Charles, Illinois, brought an action for damages against a construction company, its principal owner and president, the developers of the subdivision, and the County of Kane for defects in the septic systems on their residential properties. Plaintiffs alleged that the soil conditions in the subdivision were inadequate for the installation and operation of septic systems. Resultantly, the plaintiffs have incurred substantial damage in an attempt to remedy the inadequacies in the septic systems.

With regard to the defendant-developers, Fitzsimmons and Fisher, the plaintiffs sought damages on the basis of fraud, implied warranty of habitability and a third theory which combined aspects of both misrepresentation and negligence. The trial court dismissed the counts sounding in fraudulent misrepresentation and negligence with leave to amend and dismissed the implied warranty counts with prejudice. Plaintiffs filed a notice of appeal in connection with dismissal of the implied warranty counts and the trial court found no just reason for delay of enforcement or appeal of its order (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a)).

On appeal the plaintiffs argue that the defendants, who were the original developers of land, but not the direct sellers to the plaintiffs, should be liable on a theory of implied warranty of habitability for the defective operation of the plaintiffs' septic systems. Their argument centers on the proposition that the developers are in the best position to determine the suitability of the land for the operation of septic systems and to spread the cost of testing before the sale and remedying defects presumably before and after sale. The plaintiffs refer us to several cases from other states where developers have been held liable for various shortcomings of the property sold. Plaintiffs rely on *Witty v. Schramm* (1978), 62 Ill. App. 3d 185, 379 N.E.2d 333, for the test of liability on implied warranty which had been expressed earlier in *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17, 364 N.E.2d 986. Applying *Witty*, the plaintiffs conclude that implied warranty of habitability liability should be extended to developers for the additional reasons that they have the best opportunity to test and remedy the soil conditions and are in the best position to spread the costs of repair and that they should be held to a duty to know of the condition of the soil and to notify persons who build on residentially

zoned property of the soil condition and that this is particularly important where the purchasers generally lack the ability to protect themselves against unknown defects.

The defendants argue, also relying on *Witty*, that there is no implied warranty of habitability in Illinois as to vacant property; that there is no implied warranty of habitability as between plaintiff-purchasers and defendant-developers who did not sell the property to the plaintiffs and that therefore no privity exists upon which the warranty can be claimed; that public policy dictates that developers not be burdened with warranties of habitability as it would work chaos in the real estate market by imposing increased costs which would have to be borne by prospective purchasers; and, that developers would be required to control the subsequent development of the property by builders to be assured proper septic systems, foundations and the like were installed.

We do not believe the decision in this case is or should be controlled by *Witty*, relied upon by both parties. That case involved a seller sued under a theory of implied warranty of habitability, among other theories, by the purchaser of a vacant lot when, after excavation for a basement, the cavity flooded from the percolation of subsurface water. The court in *Witty* said, in applying the three-prong test of *Conyers*, that the seller could not be held to special knowledge of the existence of subsurface conditions and therefore did not meet the first test under *Conyers*, that being of responsibility for the defects. We have serious reservations about the applicability of the *Conyers* test to the sale of undeveloped or unimproved and vacant property, since that case involved the sale of a new residence and did not relate directly to soil conditions, but rather quality of construction.

Instead, we believe this court's decision in *Petersen v. Hubschman Construction Co.* (1977), 53 Ill. App. 3d 626, 368 N.E.2d 1044, which was affirmed by the supreme court in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, extended the doctrine of implied warranty of habitability to an extent that it would include defects in septic systems arising from unsuitable soil conditions including subsurface conditions. In *Petersen* the supreme court held that implied in the contract for the sale from the builder-vendor to the vendee is a warranty that the house, when completed and conveyed to the vendee, would be reasonably suited for its intended use. The court observed that the vendee is usually not knowledgeable in construction practices and, to a substantial degree, must rely upon the integrity and the skill of the builder-vendor, who is in the business of building and selling houses. The vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a residence (*Petersen*, 53 Ill. 2d

31, 40, 389 N.E.2d 1154, 1158.) We conclude that an implied warranty of habitability should exist to protect home buyers against defects in septic systems regardless of whether they arise from underlying soil conditions.

Indeed, we are struck by the similarity of the septic system defect of the instant case with a case decided subsequent to, but in the same judicial district as, *Witty*. In *Wiersema v. Workman Plumbing, Heating & Cooling, Inc.* (1980), 87 Ill. App. 3d 535, 409 N.E.2d 159, the owner-builder sued the plumber who installed the septic system during the construction of the owner-builder's residence. The appellate court affirmed the judgment of the trial court in favor of the plumber. The evidence supported a finding by the trial court that the plumber performed in a workman-like manner. Since the plaintiff failed to plead the elements of actionable fraud the appellate court refused to consider whether or not the plumber's conduct amounted to fraudulent concealment of soil conditions at the homesite. In *dictum* the court said:

> "[T]he theory of an implied warranty of habitability in the construction of a new residence which is sold to a consumer by the vendor-builder was firmly established in *Hanavan v. Dye* (1972), 4 Ill. App. 3d 576, 281 N.E.2d 398. (Accord, *Weck v. A:M Sunrise Construction Co.* (1962), 36 Ill. App. 2d 383, 184 N.E.2d 72.) In a recent landmark case, *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, the warranty in the sale of a newly constructed residence by a vendor-builder was expanded beyond the warranty of habitability previously implied by the courts. The warranty of habitability was previously violated only by a home which, (1) did not keep out the elements; (2) did not provide a reasonably safe place to live; or (3) was not structually sound because of a substantial defect of construction. Just because many defects render a house aesthetically unsatisfying, the warranty of habitability which the law will imply is of no assistance to the consumer who purchases a house. However, the *Petersen* court has now held that the builder-seller impliedly warrants that the residence is reasonably suited for its intended use. This new implied warranty is similar to that used in the uniform commercial code, warranty of merchantability or warranty of fitness for a particular purpose. Thus, under the *Petersen* decision defects which do not make the new home totally uninhabitable are, nevertheless, covered by the expanded *Petersen* warranty of habitability. We have no doubt that a defective septic system such as the one disclosed by the record in the present appeal would fall within the implied warranty of a builder-vendor. However, the defendant in this case is not a builder-vendor. The defendant is rather just one of the artisans engaged by the plaintiff, who was the

owner and builder, in the erection of a residence on his own land for his own use. We do not believe that the implied warranty of *Petersen* should be extended to this case where the defendant is not a builder-vendor, and is acknowledged to have completed the contract bargained for." *Wiersema,* 87 Ill. App. 3d 535, 536-37, 409 N.E.2d 159, 161.

We adopt the rationale of the *dictum* in *Wiersema* as it applies to the facts in the case at bar. As noted previously, we believe that an implied warranty of habitability extends as between builder-vendors and purchasers so as to protect purchasers against the defects in septic systems regardless of whether the defects arise by reason of underlying soil conditions.

However, as with all of the Illinois cases cited by the parties and the cases from foreign jurisdictions, the warranty only exists, if at all, between builder-vendors and their vendees. We know of no case, and none has been cited, that extends the warranty beyond the builder-vendor to vendee relationship (*Petersen; Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479, 331 N.E.2d 634) and landlord-tenant relationships (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208). In its landmark decision in *Petersen* the supreme court delineated the parameters of the doctrine of implied warranty of habitability in expressing the underlying need for the doctrine:

"Because of the vast change that has taken place in the method of constructing and marketing new houses, we feel that it is appropriate to hold that in the sale of a new house by a builder-vendor, there is an implied warranty of habitability which will support an action against the builder-vendor by the vendee for latent defects and which will avoid the unjust results of *caveat emptor* and the doctrine of merger."

and,

"the implied warranty does not arise as a result of the execution of the deed. *It arises by virtue of the execution of the agreement between the vendor and the vendee.*" (Emphasis added.) *Petersen,* 76 Ill. 2d 31, 39-40, 41.

In the case at bar the record discloses that no builder-vendor to vendee relationship exists between the defendants and the plaintiffs. Instead it appears that there were several successors in title to the property which was eventually built upon and sold by Showcase Builders, not a party to this appeal, to the plaintiffs. We view the language of *Petersen* and the relevant cases cited therein as limiting an implied warranty of habitability to landlord-tenant and builder-vendor to vendee relationships. See also *Mellander v. Kileen* (1980), 86 Ill. App. 3d 213, 407 N.E.2d 1137.

22

In light of our holding we need not discuss defendants' further contention that assertion of an implied warranty of habitability is barred by the doctrine of merger and the rule of *caveat emptor*, but note that the supreme court in *Petersen* stated that as a matter of public policy it (the implied warranty) relaxes the rule of *caveat emptor* and the doctrine of merger in the special situation of the purchase of a new home by a vendee because of the unusual dependent relationship of the vendee upon the vendor-builder (*Petersen*, 76 Ill. 2d 31, 41).

Accordingly, we affirm the judgment of the Circuit Court of Kane County dismissing counts V and VII of plaintiffs' amended complaint alleging liability of the defendant developers on theories of implied warranty of habitability.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.