Docket No. 90439–Agenda 18–September 2001.

THE BOARD OF MANAGERS OF THE VILLAGE CENTRE CONDOMINIUM ASSOCIATION, INC., Appellant, v. WILMETTE PARTNERS, an Illinois Limited Partnership, 
et al
., Appellees.

Opinion filed November 21, 2001.

JUSTICE THOMAS delivered the opinion of the court:

At issue in this case are the requirements for a valid waiver of the implied warranty of habitability. The plaintiff, the Board of Managers of the Village Centre Condominium Association, Inc. (the Board), as representative of the owners of condominium units in relation to matters involving common elements, filed a one-count complaint in the circuit court of Cook County against defendants, Wilmette Partners (Wilmette), and Wilmette’s general partner, Richard A. Keefe (Keefe), for breach of the implied warranty of habitability. The breach concerned the garage of the Board’s condominium building.

Defendants moved to dismiss the Board’s complaint with prejudice pursuant to section 2–619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2–619(a)(9) (West 1996)), on the ground that a disclaimer in the purchase contracts entered into by the unit owners and defendants barred any claims for breach of the implied warranty of habitability. The circuit court agreed with defendants and dismissed the Board’s complaint with prejudice. The circuit court thereafter denied the Board’s motion to vacate and entered a Supreme Court Rule 304(a) finding (155 Ill. 2d R. 304(a)). The Board thereafter filed a first amended complaint and a second amended complaint. The Board’s second amended complaint remains pending before the circuit court.

The appellate court adopted the circuit court’s written order as its order and affirmed the circuit court. No. 1–99–0571 (unpublished order under Supreme Court Rule 23). We allowed the Board’s petition for leave to appeal (177 Ill. 2d R. 315), and now reverse the circuit and appellate courts.

BACKGROUND

For purposes of reviewing a court’s ruling on a defendant’s motion to dismiss, this court accepts as true the well-pleaded allegations of a plaintiff’s complaint. 
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 293 (1998). The well-pleaded facts in the Board’s complaint show that in 1988 and 1989, defendant Wilmette developed a 36-unit condominium building in Wilmette, Illinois. The condominium building is a five-story structure. The two lowest levels include an indoor parking garage, which contains indoor ramps connecting the levels and leading from the upper level of the garage to the street. The parking garage is a common element of the building.

Wilmette used various real estate contracts to sell the condominium units. Twenty-nine of those contracts contained purported waivers of the implied warranty of habitability, while seven of those contracts did not. Only those contracts containing purported waivers of the implied warranty of habitability are at issue in this case.

The Board’s complaint alleges that the upper level of the garage had certain specified design and construction defects which were not apparent prior to the sale of the condominium units. As a result of the design and construction defects, the concrete on the upper level of the garage floor developed cracks and separated, and the floor’s structural support corroded. The upper level of the garage thus was incapable of supporting its own weight, was incapable of safely supporting the weight of normal vehicular traffic in the garage, and was in danger of collapsing into the lower level of the garage. Consequently, the garage could not be used by the unit owners for its intended purpose.

As noted, the Board filed suit against defendants for breach of the implied warranty of habitability with regard to the parking garage. Defendants then moved to dismiss the Board’s complaint, arguing that a disclaimer in the purchase agreements was a valid disclaimer of the implied warranty of habitability. Defendants contended that the disclaimer was so clear and conspicuous that no other conclusion could be reached but that the unit owners read and understood the language in those disclaimers.

The disclaimers were set forth in section 10 of the purchase contracts and provided:

“EXCEPT AS EXPRESSLY SET FORTH IN THIS PARAGRAPH 10, SELLER HEREBY EXCLUDES AND DISCLAIMS ANY AND ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BY WAY OF ILLUSTRATION AND NOT LIMITATION, WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE AND MERCHANTABILITY.

THE LIMITED WARRANTIES CONTAINED HEREIN SHALL BE IN LIEU OF ANY OTHER WARRANTY, WHETHER EXPRESSED OR IMPLIED, PROVIDED THAT IN THE EVENT ANY ITEM WARRANTED HEREIN IS DEEMED TO BE A CONSUMER PRODUCT UNDER THE MAGNUSON-MOSS WARRANTY–FEDERAL TRADE COMMISSION IMPROVEMENT ACT, THEN, AND ONLY IN THAT EVENT, THE DISCLAIMER OF IMPLIED WARRANTY SHALL COMMENCE FROM AND AFTER THE EXPIRATION OF THE EXPRESS WARRANTIES SET FORTH HEREIN.”

Following briefing and argument, the circuit court entered a written order dismissing the Board’s complaint with prejudice pursuant to section 2–619. The circuit court rejected the Board’s argument that the disclaimer at issue was defective because it did not use the phrase “implied warranty of habitability.” The circuit court also rejected the Board’s argument that the disclaimer failed to put unit owners on notice of its implications. The circuit court concluded that given the conspicuous location of the disclaimer near the signature page, the large size print of the disclaimer, and the plain language of the disclaimer, the disclaimer was, as a matter of law, part of the agreement between the parties. The circuit court therefore held that the unit owners had waived and/or disclaimed their warranties of habitability when they signed the purchase contracts.

The appellate court adopted the ruling of the circuit court in its entirety. As noted, the Board then filed a petition for leave to appeal to this court (177 Ill. 2d R. 315), which was granted.

ANALYSIS

At the outset, we note that because this appeal arises from the dismissal of the Board’s complaint based upon section 2–619, our review is 
de novo
. 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993). In this appeal, the Board again challenges the circuit court’s finding that the disclaimer at issue was sufficient to defeat its claim. The Board argues that the circuit and appellate courts erred in finding that the disclaimer: (1) did not have to reference the implied warranty of habitability; (2) was conspicuous; (3) made a full disclosure of the consequences of disclaimer; and (4) was proven to be the “in-fact” agreement of the parties.

The dispute in this case essentially turns on language in this court’s decision in 
Petersen v. Hubschman Construction Co.
, 76 Ill. 2d 31 (1979). In 
Petersen
, this court for the first time held that the implied warranty of habitability applies to contracts for the sale of new homes by builder-vendors. 
Petersen
, 76 Ill. 2d at 39-40. We noted that the implied warranty of habitability in cases concerning the sale of new homes by builder-vendors was a judicial innovation of recent origin. 
Petersen
, 76 Ill. 2d at 38. The implied warranty of habitability was created to avoid the harshness of 
caveat emptor
 and the doctrine of merger where the purchasers of new homes discover latent defects in their home. 
Petersen
, 76 Ill. 2d at 38. We concluded that “implied in the contract for sale from the builder-vendor to the vendees is a warranty that the house, when completed and conveyed to the vendees, would be reasonably suited for its intended use.” 
Petersen
, 76 Ill. 2d at 42.

In defining the implied warranty of habitability in the context of a new home purchase, we noted that the use of the term “habitability” was unfortunate because that term implied that the warranty was satisfied where a house merely was capable of being inhabited. 
Petersen
, 76 Ill. 2d at 41. In fact, prior to 
Petersen
, the warranty of habitability was found to be violated only where a home did not keep out the elements, did not provide a reasonably safe place to live, or was not structurally sound. See 
Park v. Sohn
, 90 Ill. App. 3d 794, 797-98 (1980), 
aff’d in part & rev’d in part on other grounds
, 89 Ill. 2d 453 (1982). Consequently, in order to clarify the implied warranty of habitability, we stated that the meaning of habitability in the context of a new home purchase might more accurately be conveyed through language similar to that used in the Uniform Commercial Code (UCC) warranties of merchantability or of fitness for a particular purpose. 
Petersen
, 76 Ill. 2d at 41-42. Drawing an analogy to the provisions of the UCC, we held that implied in a contract for sale from a builder-vendor is a warranty that the home, when completed and sold, would be reasonably suited for its intended use. 
Petersen
, 76 Ill. 2d at 42.

This court further held that a knowing disclaimer of the implied warranty of habitability would not be against public policy, although such a disclaimer must be strictly construed against the builder-vendor. 
Petersen
, 76 Ill. 2d at 43. Quoting a decision from the Supreme Court of Missouri, we held that a party raising disclaimer as a defense must show that the disclaimer was a conspicuous provision that fully disclosed its consequences, and that the disclaimer in fact was the agreement reached by the parties. 
Petersen
, 76 Ill. 2d at 43, quoting 
Crowder v. Vandendeale
, 564 S.W.2d 879, 881 n.4 (Mo. 1978).

In their motion to dismiss, and again before this court, defendants argue that based upon this court’s language in 
Petersen
, a party need not use the phrase “implied warranty of habitability” in order to effectively disclaim that warranty, but instead may use the “more meaningful” terminology “implied warranties of merchantability and fitness.” Defendants then contend that their disclaimer, using the terminology “implied warranties of merchantability and fitness,” effectively barred the Board’s cause of action because it was conspicuous, it fully disclosed its consequences, and it was the agreement reached by the parties.

In support of their position, defendants cite the decision of the Third District of the appellate court, in 
Country Squire Homeowners Ass’n v. Crest Hill Development Corp.
, 150 Ill. App. 3d 30 (1986). The court in that case rejected the plaintiff’s argument that a disclaimer was defective because it failed to use the phrase “warranty of habitability.” 
Country Squire
, 150 Ill. App. 3d at 32. The court held that the plaintiff’s argument failed “because the contract did use the more meaningful terminology suggested by the supreme court–‘the implied warranties of merchantability and fitness.’ ” 
Country Squire
, 150 Ill. App. 3d at 32. The circuit court in this case, although it did not cite 
Country Squire
, likewise held that the absence of the phrase “implied warranty of habitability” was not fatal, “because the purchase contracts used the more meaningful terminology suggested by the supreme court in 
Petersen
–‘the implied warranties of merchantability and fitness.’ ”

In this court, the Board again argues that the disclaimer was defective because it did not refer to the implied warranty of habitability by name. The Board observes that aside from the court in 
Country Squire
, appellate court panels have focused on whether a disclaimer mentioned the word “habitability” as a factor in deciding whether a disclaimer was valid. See 
Briarcliffe West Townhouse Owners Ass’n v. Wiseman Construction Co.
, 134 Ill. App. 3d 402, 410 (1985); 
Herlihy v. Dunbar Builders Corp.
, 92 Ill. App. 3d 310, 316 (1980); 
Tassan v. United Development Co.
, 88 Ill. App. 3d 581, 589 (1980). The Board argues that the court in 
Country Squire
 erred in finding that the terms “merchantability” and “fitness for a particular purpose” are effective substitutes for “implied warranty of habitability,” as this court in 
Petersen
 was referencing the UCC for purposes of analogy only.

We agree. In 
Petersen
, this court stated that it was drawing an 
analogy
 to the UCC in order to more accurately convey the meaning of the implied warranty of habitability. 
Petersen
, 76 Ill. 2d at 41-42. More recently, in 
Board of Directors of Bloomfield Club Recreation Ass’n v. Hoffman Group, Inc.
, 186 Ill. 2d 419 (1999), we again noted that reference to the UCC in 
Petersen
 was for purposes of analogy. Specifically, we noted that:

“[T]he Association mischaracterizes the purpose behind our comparison of the implied warranty of habitability with the commercial warranties of merchantability and fitness for a particular purpose. *** In departing from that inequitable approach [of requiring a dwelling to be wholly unsafe and unliveable in order to support a claim], the court found favor in viewing the implied warranty of habitability 
as somewhat like
 the warranties of merchantability and fitness for a particular purpose. *** Therefore, 
even in drawing a comparison
 with the Uniform Commercial Code, the court kept intact both main elements of the implied warranty of habitability–a lack of defects affecting the residential unit and the fitness of that unit for use as a residence.” (Emphasis added.) 
Board of Directors of Bloomfield Club
, 186 Ill. 2d at 427-28.

It is clear, then, that in analogizing the implied warranty of habitability to the UCC warranties, this court never intended that those warranties would be interchangeable. Given that the implied warranty of habitability is distinct from other warranties by its very nature, we find any disclaimer that does not reference the implied warranty of habitability by name is not a valid disclaimer of that warranty. Consequently, because the disclaimer in this case did not refer to the implied warranty of habitability by name, that disclaimer was not effective to waive the warranty. The circuit court, therefore, erred in dismissing the Board’s complaint with prejudice pursuant to section 2–619(a)(9) of the Code on the ground that the disclaimer barred the Board’s cause of action.

Because we find that the disclaimer in this case was not valid because it did not refer to the implied warranty of habitability by name, we need not address the Board’s additional claims that the disclaimer at issue was invalid because it did not appear on the signature page, it was not conspicuous, it did not make a full disclosure of its consequences, and it was not proven to be the in fact agreement of the parties. We do note that in most cases, however, those issues will present questions of fact unique to each case.

The Board also asks this court to adopt or recommend the model disclaimer of the implied warranty of habitability published by the Chicago Bar Association. See T. Homburger, 
The Waiver and Disclaimer of the Implied Warranty of Habitability
, Chi. B. Rec. 364, Appendix I (May-June 1984). Although we decline to adopt that disclaimer as the law of this court, we do observe that disclaimers such as that published by the Chicago Bar Association or similar to the disclaimer at issue in 
Breckenridge v. Cambridge Homes, Inc.
, 246 Ill. App. 3d 810, 813-14 (1993), clearly identify the implied warranty of habitability, set forth the consequences of waiving the warranty, and establish that the disclaimer was the agreement of the parties. As the court noted in 
Breckenridge
, where disclaimer language is brought to a purchasers’ attention, the consequences of the waiver are made known to the purchasers, and the purchasers knowingly waive their rights to pursue an action for any alleged breach of the implied warranty of habitability, there is an effective disclaimer of the implied warranty of habitability under 
Petersen
. See 
Breckenridge
, 246 Ill. App. 3d at 818-19.

CONCLUSION

For all the foregoing reasons, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

Reversed and remanded.