2015 IL App (1st) 140171

No. 1-14-0171

Filed May 1, 2015

FIFTH DIVISION

IN THE APPELLATE COURT

OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN FATTAH, | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | No.  11 L  6937 |
| | ) | |
| MIREK BIM and ALINA BIM, | ) | Honorable |
| | ) | Sanjay T. Taylor, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE PALMER delivered the judgment of the court, with opinion.

Justices McBride and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1     The patio on plaintiff John Fattah's single-family home collapsed four months after he moved in. Plaintiff had bought the house "as is" from its original purchaser, who had waived the implied warranty of habitability on the house when she purchased it new three years earlier. Plaintiff filed suit against defendants Mirek and Alina Bim, the developers of the house, alleging breach of the implied warranty of habitability. The circuit court held for defendants, finding that the original purchaser's waiver of the

implied warranty of habitability bound plaintiff. On appeal, plaintiff argues: (1) the original purchaser's waiver of the implied warranty of habitability does not bind plaintiff, a subsequent purchaser who had no knowledge of the waiver, and (2) it is irrelevant that plaintiff purchased the house from the original purchaser "as is." Defendants have not filed a brief in response but we may consider the case on plaintiff's brief alone pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We reverse and remand.

¶ 2                                                    BACKGROUND

¶ 3          Mirek Bim (Bim) was the president and owner of Masterklad, Inc. (Masterklad), a corporation principally engaged in the business of building houses. In the summer of 2005, Masterklad began construction of a single-family home at 3140 Henley Street, Glenview, Illinois (the house). Six months after the house was completed, Bim hired a subcontractor to add a 1,000-square-foot patio to the house. The patio was over six feet high, built on a grade sloping downward from the back of the house and supported by a retaining wall. A door opened onto the patio from the back of the house. While the house had three other entrances, namely, through the front door, a side door and the garage, the door to the patio provided the only exit from the rear of the house and served as access to the patio.

¶ 4          In May 2007, Beth Lubeck purchased the new house from Masterklad for $1,710,000. In July 2007, she and Bim, as president of Masterklad, executed a "waiver-disclaimer of implied warranty of habitability" agreement. In the agreement, Masterklad "hereby and forever" disclaimed and Lubeck "knowingly, voluntarily, fully and forever" waived the implied warranty of habitability applicable to the new house. An "express

warranties" provision in the agreement provided:

> "The Agreement does provide that Purchaser will receive from Seller (the 'Warrantor') and [*sic*] express written warranty the form of which is attached to the Agreement. The Warrantor shall comply with the provisions of the express warranty and Purchaser accepts the express warranty granted therein as a substitute for the Implied Warranty of Habitability hereby waived by Purchaser and disclaimed by Seller."

¶ 5    In the agreement, the parties acknowledged that, if a dispute arose between Lubeck and Masterklad, Lubeck would not be able to rely on the implied warranty of habitability as a basis for suing Masterklad and Masterklad could not use the implied warranty of habitability as a defense. Instead, she would rely on the express written warranties. In a "survival and benefit" provision, the parties agreed:

> "The Waiver and Disclaimer of Implied Warranty of Habitability contained here *** shall be binding upon and inure to the benefit of Seller, Purchaser and their respective successors, assigns, heirs, executors, administrators, and legal and personal representative."

The agreement provided that it was made a part of the real estate contract between Lubeck and Masterklad. The record on appeal contains a copy of neither the sales contract between Lubeck and Masterklad nor of the express written warranty given in exchange for the waiver.

¶ 6    In May 2010, three years after Lubeck purchased the house, she sold it to plaintiff "as is" for $1,050,000. There is no copy of the real estate sales contract between Lubeck and plaintiff in the record, only a copy of the " 'As Is' Addendum Rider"

3

which, according its terms, was made a part of and incorporated into the real estate sales contract. The rider provides:

"Seller and Buyer acknowledge and agree that the Property is being sold to Buyer in its existing, 'as is' condition *** and Seller shall not be responsible for the repair, replacement or modification of any deficiencies, malfunctions or mechanical defects on the Property or to any any improvements thereon ***. Seller makes no representation or warranty to Buyer, either express or implied, as to the (1) condition of the Property, (2) zoning *** or (3) the suitability of the Property for the Buyer's intended use or purpose or for any other use or purpose."

Pursuant to the rider, Lubeck agreed that selling the property "as is" did not relieve her from her "applicable legal obligation to disclose any and all known material latent defects" to plaintiff. The sale to plaintiff closed in November 2010.

¶ 7      In February 2011, four months after plaintiff moved into the house, the patio collapsed. In July 2011, plaintiff filed a complaint against defendants alleging they were the developers of the property and had breached the implied warranty of habitability on the house by delivering the house with latent defects in the construction and/or design of the patio that led to its collapse.[1] He asserted defendants were the developers of the house and had impliedly warranted that the house would be in a safe, fit and habitable condition and free from defects. Plaintiff claimed that the defects in the home were not

---

[1] Alina Bim (Alina) is the wife of Mirek Bim. Plaintiff named Alina as a defendant, asserting the Bims were developers of the house. As the trial court noted, there was no evidence presented regarding Alina's relationship to Masterklad. However, in their *pro se* answer to plaintiff's motion for default judgment, defendants acknowledge that "we [defendants] sold" the house to Lubeck.

discoverable by him at the time of purchase and, as a result of the defect and defendants' breach, he was now required to repair the patio to bring it to a safe and habitable condition. He sought damages in excess of $86,000. Three days after plaintiff filed his complaint, Masterklad was voluntarily dissolved.[2]

¶ 8 Defendants filed a motion for summary judgment, arguing: (1) Lubeck's waiver/Masterklad's disclaimer of the implied warranty of habitability was binding on plaintiff; (2) plaintiff waived the implied warranty of habitability because he brought the house "as is"; (3) the implied warranty of habitability did not apply because the alleged defects did not affect habitability; and (4) the implied warranty of habitability did not apply because the alleged defects were not latent.

¶ 9 In an affidavit attached to defendants' for summary judgment, Bim stated that Lubeck had purchased the home "with a limited one-year warranty," Masterklad and Lubeck had executed the waiver/disclaimer agreement and made it part of their real estate sales contract and all agreements with Lubeck "were fully performed." Bim asserted that he met with Lubeck at the house at the time she was selling the house to plaintiff and saw "there were crumbling and subsiding patio stones along the wall." He claimed "the defects in the patio" were not latent at that time as they were "clearly visible upon casual observation of anyone on the patio or looking out the back door" and Lubeck was, therefore, "well aware" that the retaining wall of the patio was collapsing when she sold the property to plaintiff. Bim stated that he had a conversation with Lubeck while standing on the patio on the day she signed the sales contract with

---

[2] At trial, Bim testified that he had since reregistered Masterklad as a "DBA" sole proprietorship in Cook County.

plaintiff and "the defect in the patio was clearly obvious at the time." He claimed he asked Lubeck whether she intended to ask Masterklad to repair the patio, "merely as a plea of goodwill," and she replied that she was not going to request any repairs to defects in the patio as her buyer was purchasing the property "as is." Bim asserted that the collapse of the retaining wall on the back patio "does not interfere with the home's habitability" as "it is [still] possible to freely enter and exit the premises" through the three other entrances/exits to the house.

¶ 10    In an affidavit attached to plaintiff's response to the motion for summary judgment, plaintiff claimed that, at the time he signed the purchase agreement with Lubeck and closed on the house, he was unaware that Lubeck had signed an agreement waiving her right to assert an implied warranty of habitability claim against Masterklad. He stated that he had bought the house from Lubeck "as is" and understood that he was waiving some of his rights to seek recourse against Lubeck. Plaintiff asserted, however, that "it did not occur to [him], and [he] did not intend, that this rider impacted any right that [he] might have against any party other than Lubeck." He stated that he observed "some deterioration on the brickwork of the patio" at the time he signed the sales contract but did not observe any deterioration "with respect to the retaining wall of the patio." After signing the purchase agreement, plaintiff commissioned a home inspection of the house. Plaintiff asserted that "[t]he inspector, while noting deterioration in the brickwork, did not report any problem with the retaining wall of the patio." There is no copy of the inspector's report in the record. Plaintiff claimed that the rear door to the house was six feet off the ground and, therefore, the six-foot-high patio provided the rear exit from the house. He asserted the patio's

collapse removed that exit and the principal outdoor entertainment for his family and the "only convenient and safe place to have family barbeques." He claimed the patio's collapse had "significantly impaired [his family's] enjoyment of the property and prevented [them] from using the house as [they] intended as the time of purchase."

¶ 11    The circuit court denied defendants' motion for summary judgment and the case proceeded to trial, with defendants appearing *pro se*.[3]

¶ 12    During the bench trial, plaintiff testified that, when he bought the house, he saw that one corner of the patio was "kind of cracked" and had been cemented but he thought the patio was "in good shape." The inspector he hired to inspect the patio at that time did not indicate there was any structural defect in the patio. Plaintiff testified regarding the extent of the damage to the patio and how he and his family used the patio and rear entrance from the house to the patio to come and go from the house.

¶ 13    Michael Loyfman, a mechanical engineer and general contractor, testified that he had been hired by plaintiff to inspect the patio after the collapse. Loyfman had constructed "hundreds" of patios over his 33-year career and it was his opinion that, in order to be structurally sound, the retaining wall of plaintiff's patio should have been built with an 8- to 12-inch-thick concrete wall. He stated that the patio had, however, been constructed with only 4-inch thick "block" wall with two hollow holes in each brick and, as a result, this retaining wall could not support the weight of the patio and gave way. Loyfman explained his opinion in detail and testified it would not have been possible for anyone to differentiate between an 8-inch solid concrete wall and a 4-inch hollow

---

[3] Defendants initially appeared *pro se*. They then obtained counsel. Defendants' counsel prepared their motion for summary judgment but withdrew after the court denied the motion. When defendants failed to obtain new counsel, the court granted them leave to proceed *pro se*.

"block" wall before the patio collapsed unless the person first removed some of paving bricks on the retaining wall to expose the structure. He also stated that the design of the patio did not provide proper drainage and, consequently, "the weather in Chicago" would destroy the patio. Loyfman estimated the cost to replace/repair the patio to be between $70,000 and $100,000.

¶ 14 Bim, appearing *pro se*, testified that he was the developer and general contractor of the house and the patio. He claimed the patio collapsed as a result of lack of maintenance, asserting that plaintiff and Lubeck had not consistently cleaned snow off the entire patio and the patio collapsed as a result of lack of maintenance. Bim testified regarding the "one year" limited warranty on the house and warranty exclusions agreed to by Masterklad and Lubeck referencing two documents, a "certificate of limited warranty" and a "warranty exclusions," neither of which is in the record. He testified regarding his continuing efforts, during his servicing visits to the house, to have Lubeck properly clean all the snow of the patio, claimed there were other entrances to the house and asserted the patio was for recreational use and most people used a patio only "half" a year.

¶ 15 On December 9, 2013, the circuit court held in defendants' favor. In its written opinion and order, the court held the evidence showed that latent defects in the patio resulted in the patio's collapse. It found that the masonry block perimeter wall of the patio was inadequate to withstand the outward forces of "six feet and approximately 150 tons of earth, crushed stone, and paver blocks inside the perimeter walls," resulting in the collapse. It found defendants' argument that the patio failed due to plaintiff and Lubeck's failure to clear snow off the patio during the winter months unpersuasive.

¶ 16    The court then found that, although the patio had latent defects, plaintiff could not recover as, pursuant to the waiver/disclaimer agreement, Lubeck had expressly waived and Masterklad expressly disclaimed the implied warranty of habitability. The court pointed out that the waiver agreement provided that the waiver/disclaimer "shall survive the closing of the sale of Purchaser of the Residence and shall be binding upon and inure to the benefit of Seller, Purchaser and their respective successors, assigns."

¶ 17    In response to plaintiff's argument that he could not be bound by the waiver/disclaimer agreement as he had bought the house without knowledge of Lubeck's waiver, the court noted, without further explanation, "there is no dispute that he purchased the home from Ms. Lubeck 'as is.' " It also stated that, as plaintiff did not argue that the waiver between Lubeck and defendants was ineffective and as a knowing waiver or disclaimer of an implied warranty of habitability is enforced in Illinois, the waiver was enforceable against plaintiff. The court reasoned that the terms of the waiver/disclaimer agreement extended Lubeck's waiver and Masterklad's disclaimer to Lubeck's and Masterklad's successors and assigns. The court found the public policy behind the implied warranty of habitability was not undermined by binding a subsequent purchaser to a waiver and disclaimer of an implied warranty of habitability between the builder and the original purchaser. It held "no builder or developer can predict who will buy the home from his original buyer" and a subsequent buyer could protect himself "by obtaining a representation in the purchase contract regarding whether the implied warranty of habitability was waived or not by the original purchaser." The court found that "[r]equiring the builder to rely on the original purchaser to disclose to a subsequent purchaser that the implied warranty was waived and disclaimed would unnecessarily

frustrate the policy favoring the enforcement of knowing waiver."

¶ 18      On January 8, 2014, plaintiff filed a timely notice of appeal.

¶ 19                                    ANALYSIS

¶ 20      The trial court found Lubeck's waiver of the implied warranty of habitability binding on plaintiff, who had bought the house from Lubeck "as is" and without knowledge of her waiver of the warranty. Plaintiff raises two assertions of error, arguing (1) waiver of an implied warranty of habitability cannot bind a subsequent purchaser who has no knowledge of the waiver and (2) the fact that he purchased the home "as is" is irrelevant.

¶ 21      In *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979), our supreme court explained that the implied warranty of habitability is a creature of public policy and a judicial innovation that aims to protect innocent purchasers of new houses who subsequently discovered latent defects in their homes. *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183 (1982) (citing *Petersen*, 76 Ill. 2d at 41).  A fundamental reason for implying a warranty of habitability is "the unusual dependent relationship of the vendee to the vendor."  *Petersen*, 76 Ill. 2d at 41. As a result of massproduction and the nature of the modern construction methods, the purchaser of a home has little or no opportunity to inspect the home prior to purchase. *Id.* at 40. Thus, a purchaser, who is generally not knowledgeable in construction practices, must rely upon the integrity and the skill of the builder-vendor, who is in the business of building and selling homes. *Id.*

¶ 22      The *Petersen* court explained that "[t]he vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a

residence." *Id.* Therefore, "[i]f construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect." *Redarowicz,* 92 Ill. 2d at 183. To that end, "it is appropriate to hold that in the sale of a new house by a builder-vendor, there is an implied warranty of habitability which will support an action against the builder-vendor by the vendee for latent defects." *Petersen*, 76 Ill. 2d at 39-40. The implied warranty of habitability applies not only to builder-vendors, but also to subcontractors and developer-vendors. See *Minton v. The Richards Group of Chicago*, 116 Ill. App. 3d 852, 855 (1983) (extending the implied warranty of habitability to subcontractors); *Tassan v. United Development Co.,* 88 Ill. App. 3d 581, 587 (1980) (extending the implied warranty of habitability to developer-vendors and condominium purchasers).

¶ 23       The implied warranty of habitability protecting the original purchaser of a new home extends to subsequent purchasers. *Redarowicz,* 92 Ill. 2d at 183. The supreme court reasoned that a subsequent purchaser is like the initial purchaser in that neither is knowledgeable in construction practice and must rely on the expertise of the person who built the home to a substantial degree. *Id.* "The compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser; in these circumstances the implied warranty of habitability survives a change of hands in the ownership." *Id.*

¶ 24       The supreme court noted that, "[w]hile the warranty of habitability has roots in the execution of the contract for sale [citation], we emphasize that it exists independently"

and "[p]rivity of contract is not required."[4] *Id.* at 183. " 'The fact that the subsequent purchaser did not know the home builder, as did the original purchaser, does not negate the reality of the "holding out" of the builder's expertise and reliance which occurs in the marketplace.' " *Id* (quoting *Terlinde v. Neely*, 271 S.E. 2d 768, 769 (S.C. 1980)). Thus, "

---

[4] The supreme court also noted that extending the implied warranty of habitability to subsequent purchasers was consistent with the Uniform Land Transactions Act (Unif. Land Transactions Act § 2-312, 13 U.L.A. 615 (1980)) (the Act) adopted by the National Conference of Commissioners on Uniform State Laws in August 1975. *Redarowicz,* 92 Ill. 2d at 184. The court stated that section 2-312 of the Act, titled " 'Third Party Beneficiaries and Assignment of Warranty,' " "provides that a subsequent purchase carries with it an assignment of the seller's warranty of quality rights to the buyer." (Emphasis omitted.) *Id.* The court found pertinent the following language:

> "(a) A seller's warranty of title extends to the buyer's successors in title.
> (b) Notwithstanding any agreement that only the immediate buyer has the benefit of warranties of quality with respect to the real estate, or that warranties received from a prior seller do not pass to the buyer, *a conveyance of real estate transfers to the buyer all warranties of quality made by prior sellers*. However, any rights the seller has against a prior seller for loss incurred before the conveyance may be reserved by the seller expressly or by implication from the circumstances. 13 Unif. Laws Ann. 615 (1980)." (Emphasis added and internal quotation marks omitted.) *Id.* at 184-85.

The Uniform Land Transactions Act has not been adopted in Illinois or in any other state.

Further, although section 2-312(b) of the Act states that a seller's warranties of quality are conveyed to a subsequent purchaser, section 2-312(c) of the Act specifically provides that such conveyances are unaffected by any disclaimer or limitation of liability that the subsequent purchaser did not know about at the time he made the purchased. Section 2-312(c) provides:

> "A seller's warranty of quality to a protected party *extends to any successor in title* of the protected party *unaffected by any disclaimer or limitation of liability of which the successor had no reason to know at the time of the conveyance* to the successor. A successor has reason to know of a disclaimer or limitation of liability if it appears in a recorded deed or other recorded document granting the real estate to the protected party." Unif. Land Transactions Act § 2-312(c), 13 U.L.A. 615 (1980).

In other words, an original purchaser's waiver of a warranty of habitability is not conveyed to a subsequent purchaser unless the subsequent purchaser knew about the waiver at the time of conveyance. Although not adopted in Illinois, section 2-312(c), supports plaintiff's argument that he cannot be bound by Lubeck's waiver as he did not know about the waiver when he bought the house.

'any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible.' " *Id.* at 185 (quoting *Moxley v. Laramie Builders, Inc.,* 600 P.2d 733, 736 (Wyo. 1979)). The court limited its holding extending the implied warranty of habitability from builder-vendors to subsequent purchasers "to latent defects which manifest themselves within a reasonable time after the purchase of the house." *Id.* at 185.

¶ 25    Despite the strong public policy reason behind the implied warranty of habitability, the supreme court found that "a knowing disclaimer of the implied warranty [of habitability is not] against the public policy of this State." *Petersen*, 76 Ill. 2d at 43. However:

> " '[o]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.' " (Emphasis in original.) *Id.* (quoting *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 n.4 (Mo. 1978)).

Any disclaimer or waiver of the implied warranty of habitability "must be strictly construed against the builder-vendor" and " 'boilerplate' clauses, however worded, are rendered ineffective in such a disclaimer." *Id.* (quoting *Crowder*, 564 S.W. 2d at 881).

¶ 26    Following the high standard set forth in *Petersen*, the party raising a disclaimer or waiver as a defense therefore has the burden to show the disclaimer or waiver is: " '(1)

*** a conspicuous provision (2) which fully discloses the consequences of its inclusion (3) that was, in fact, the agreement of the parties.' " *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 2012 IL App (1st) 111474, ¶ 29 (quoting *Board of Managers of Chestnut Hills Condominium Ass'n v. Pasquinelli, Inc.,* 354 Ill. App. 3d 749, 758 (2004)). "[A]ny disclaimer that does not reference the implied warranty of habitability by name is not a valid disclaimer of that warranty." *Board of Managers of the Village Centre Condominium Ass'n, Inc v. Wilmette Partners,* 198 Ill. 2d 132, 140 (2001). "[W]here disclaimer language is brought to a purchasers' attention, the consequences of the waiver are made known to the purchasers, and the purchasers knowingly waive their rights to pursue an action for any alleged breach of the implied warranty of habitability, there is an effective disclaimer of the implied warranty of habitability under *Petersen.*" *Id.* at 141.

¶ 27                           1.  Impact of Lubeck's Waiver on Plaintiff

¶ 28        It is uncontested that Lubeck's waiver of the implied warranty of habitability on the house was valid. The waiver agreement between Lubeck and Masterklad clearly explained the implied warranty of habitability and the impact of Lubeck's waiver of the warranty on Lubeck's right to pursue Masterklad for latent defects and reflected Lubeck's agreement that she "knowingly, voluntarily, fully and forever" waived the warranty. The question is whether Lubeck's valid waiver binds plaintiff, a subsequent purchaser.

¶ 29        Plaintiff argues that he is not bound by Lubeck's waiver of the implied warranty of habitability as he did not have any knowledge of Lubeck's waiver of the implied warranty and his waiver, therefore, was not knowing or intentional. He asserts that depriving him

of protection against latent construction defects when he never intended to waive that protection is inconsistent with the public policy underlying the implied warranty of habitability, the continual expansion of the warranty's scope and the limitations placed on waivers of the warranty. We agree, and find that Lubeck's waiver of the implied warranty of habitability cannot bind plaintiff as he had no knowledge of the waiver when he bought the house from Lubeck and was not a party to the waiver agreement between Lubeck and Masterklad. The question of whether a purchaser's waiver of the implied warranty of habitability binds a subsequent purchaser who purchased the home without knowledge of the waiver is a matter of first impression in Illinois.

¶ 30      As the proponent of the waiver, it is defendants' burden to establish a valid waiver between plaintiff and defendants. *Petersen*, 76 Ill. 2d at 43. They must, therefore, provide evidence showing: (1) the language of the waiver is conspicuous and includes the words " 'implied warranty of habitability,' " (2) the waiver fully discloses the consequences of its inclusion and (3) the waiver was brought to the plaintiff's attention and was, in fact, the agreement of the parties, here plaintiff and defendants. *Board of Managers of Chestnut Hills Condominium Ass'n*, 354 Ill. App. 3d at 758; *Board of Managers of the Village Centre Condominium Ass'n*, 198 Ill. 2d at 141. It is uncontested that there was no agreement, written or verbal, between plaintiff and defendants/Masterklad, let alone one in which the waiver of the implied warranty of habitability was conspicuously brought to plaintiff's attention and the ramifications of the waiver were fully explained to him prior to his express agreement to the waiver. Defendants presented neither evidence nor argument showing the existence of such an agreement between themselves and plaintiff or between Masterklad and plaintiff.

¶ 31    Instead, defendants based their argument below on Lubeck's waiver, asserting that her waiver of the implied warranty of habitability is binding on plaintiff. There is no question that the implied warranty of habitability on the house could extend to plaintiff , a subsequent purchaser, if the latent defects of which he complains "manifest[ed] themselves within a reasonable time after the purchase of the house." *Redarowicz*, 92 Ill. 2d at 185. However, original purchaser Lubeck's waiver of that implied warranty of habitability does not, without more, extend to a subsequent purchaser. As discussed extensively above, although an implied warranty of habitability can be waived, in order for a waiver to be effective, the purchaser must have "knowingly waive[d] their rights to pursue an action for any alleged breach of the implied warranty of habitability." *Board of Managers of the Village Centre Condominium Ass'n*, 198 Ill. 2d at 141. Plaintiff was not a party to the waiver agreement and testified at trial that he was unaware of Lubeck's waiver of the implied warranty of habitability at the time he purchased the house. Defendants did not refute this testimony. Therefore, as plaintiff was not a party to the waiver agreement between Lubeck and Masterklad and defendants failed to prove plaintiff knowingly agreed to accept Lubeck's waiver of the implied warranty, there is no basis for finding Lubeck's waiver binding on plaintiff.

¶ 32    Defendants attempted to overcome plaintiff's failure to knowingly agree to the waiver by arguing that plaintiff is Lubeck's successor and/or assign and, therefore, is bound to Lubeck's waiver agreement pursuant to the "survival and benefit" provision in the agreement. The provision states: "The Waiver and Disclaimer of Implied Warranty of Habitability contained herein shall survive the closing of the sale to Purchaser of the Residence and shall be binding upon and inure to the benefit of the Seller, Purchaser

and their respective successors, assigns, heirs, executors, administrators, and legal and personal representatives."

¶ 33     As noted above, the waiver of the implied warranty of habitability in question was a part of the real estate sales contract between Lubeck and Masterklad. In Illinois, "privity accompanies a valid assignment of a contract because it puts the assignee in the shoes of the assignor." *Kaplan v. Shure Brothers Inc.*, 153 F.3d 413, 418-19 (7th Cir. 1998) (citing *Collins Co. v. Carboline Co.,* 125 Ill. 2d 498, 511 (1988)). However, defendants presented no evidence that plaintiff is Lubeck's successor and/or assign to the original real estate sales contract between Lubeck and Masterklad such that he would be bound by the waiver agreement to which he was not a party. The sale of the real estate from Lubeck to plaintiff occurred three years after the original sale to Lubeck. Based on the record, the only conclusion that can be drawn is that the contract for sale between plaintiff and Lubeck is wholly separate and independent from the earlier contract between Lubeck and Masterklad. In the absence of an assignment, there is no privity between plaintiff and Masterklad which would place purchaser in the shoes of Lubeck with regard to this waiver. Interestingly, while lack of privity defeats the waiver, lack of privity does not defeat the warranty. *Redarowicz*, 92 Ill. 2d at 183. As plaintiff was not a party to the waiver agreement and defendants failed to show plaintiff was Lubeck's successor or assign to the agreement, plaintiff is not bound by Lubeck's waiver of the implied warranty of habitability.

¶ 34                         2. The "As is" Provision

¶ 35     The fact that plaintiff purchased the house from Lubeck "as is" does not change our determination that plaintiff is not bound by Lubeck's waiver of the implied warranty

of habitability. First, the "as is" rider is a part of the contract between plaintiff and Lubeck, and as such it does not affect any rights plaintiff may have against Masterklad. Second, even if the "as is" rider could somehow affect plaintiff's rights against Masterklad, the rider would not negate the implied warranty of habitability. The "as is" rider agreement between plaintiff and Lubeck contains no mention of either the implied warranty of habitability by name or of Lubeck's waiver of the implied warranty. Where, as here, a purchaser agrees to accept a house "as is" and the "as-is" provision does not refer to any particular implied warranty or implied warranties in general and does not disclose the consequences of the purported disclaimer to the implied warranty of habitability, the "as is" provision does not effectively disclaim the builder-vendor's implied warranty of habitability. See *Schoeneweis v. Herrin,* 110 Ill. App. 3d 800, 805-07 (1982) (holding that an "as is" clause, standing alone, cannot be an effective waiver of implied warranty of habitability).

¶ 36    A purchaser's agreement to accept a house "as is" does not amount to a knowing waiver of the implied warranty of habitability unless the builder-developer/proponent of the waiver has met his burden to show that the purchaser knowingly waived the implied warranty of habitability by showing a conspicuous provision which fully discloses the consequences of its inclusion and also that such was in fact the agreement reached. *Swaw v. Ortell*, 137 Ill. App. 3d 60, 71-72 (1984). Defendants presented no evidence to show that plaintiff knowingly waived the implied warranty of habitability when he agreed to purchase the house "as is" from Lubeck. Therefore, they failed to meet their burden to show that the "as is" provision was his knowing waiver of the implied warranty of habitability on the house.

¶ 37    Further, a disclaimer or waiver of an implied warranty of habitability protects only the person identified in the contract as benefitting from it. *1324 W. Pratt Condominium Ass'n*, 2012 IL App (1st) 111474, ¶ 32 (holding that the waiver of the implied warranty of habitability between developers and home purchasers did not apply to general contractor or masonry subcontractor because they are not identified as beneficiaries in the waiver). The "as is" rider forecloses plaintiff's ability to pursue Lubeck for defects in the house but is silent regarding plaintiff's recourse against defendants and/or Masterklad for those defects. Defendants was neither a party to plaintiff's "as is" rider agreement with Lubeck nor listed in the agreement as a beneficiary thereof. Therefore, defendants cannot claim the benefit of the waiver. Accordingly, the "as is" provision in the agreement between plaintiff and Lubeck does not change our determination that plaintiff is not bound by Lubeck's waiver of the implied warranty of habitability.

¶ 38    In sum, (a) defendants failed to meet their burden to show plaintiff knowingly waived the implied warranty of habitability, (b) the "successor and assign" provision in Lubeck's waiver agreement does not bind plaintiff and (c) the "as is" rider agreement does not bind plaintiff to Lubeck's waiver of the implied warranty of habitability. We, therefore, reverse the trial court's holding that Lubeck's waiver of the implied warranty of habitability is binding on plaintiff and its finding in favor of defendants.

¶ 39                                  3.  Remand

¶ 40    Plaintiff asserts that, if we reverse the trial court's decision in favor of defendants, then he is entitled to recover under the implied warranty of habitability. We disagree**.**

¶ 41    In order to show breach of an implied warranty of habitability, a subsequent purchaser must show: (1) there are latent defects in the house, (2) those latent defects

interfere with the reasonably intended use of the house and (3) those latent defects manifested themselves within a reasonable time after the house was purchased. *Redarowicz*, 92 Ill. 2d at 185. The trial court addressed the first element of plaintiff's cause of action against defendants for breach of implied warranty of habitability claim, finding that defendants sold the home with latent construction defects in the patio that caused the collapse. However, given its decision that Lubeck's waiver of the implied warranty of habitability was binding on plaintiff, it did not address the remaining two elements: whether the latent defects interfered with the reasonably intended use of the house and whether those defects manifested within a reasonable time after the purchase. These elements were contested below and are questions of fact for the trier of fact to determine. *Park v. Sohn*, 89 Ill. 2d 453, 463 (1982); *Glasoe v. Trinkle,* 107 Ill. 2d 1, 13 (1985) (in the landlord-tenant context). Accordingly, given our reversal of the trial court's finding that plaintiff is bound by Lubeck's waiver of the implied waiver of habitability, we remand to the trial court for factual determinations on the remaining two elements of plaintiff's breach of the implied warranty of habitability claim.

¶ 42                                         CONCLUSION

¶ 43        For the foregoing reasons, we reverse the decision of the trial court and remand for further proceedings.

¶ 44        Reversed and remanded.